# AMHERST
# COLLEGE
## 2013–14 STUDENT HANDBOOK
### In Brief

The complete *Handbook* can be found online at
www.amherst.edu/campuslife/deanstudents/handbook.

15. Fire policy violations, including but not limited to discharge of fire extinguishers, possession or discharge of fireworks, false fire alarms or tampering with a smoke detector.
16. Violation of the Commonwealth of Massachusetts law prohibiting the practice of hazing (see section on **Hazing**).
17. Violation of the Trustees' Resolution on Fraternities (see section on **Fraternities**).
18. Violation of any regulations governing the use of college housing, as specified in the section on **Housing Regulations** (https://www.amherst.edu/mm/77112/housing#regulations). Potential violations include but are not limited to damage to individual rooms or common areas, violation of the prohibition on pets in residence halls or violation of the prohibition on dropping or throwing objects from windows.
19. Acts of violence against another person, threatening violence or otherwise seeking to intimidate others.
20. Acts of retaliation against an individual who initiates or participates in a complaint.

## Appendix B: College Sexual Misconduct Policy

The **Statement on Respect for Persons** voted on by the faculty can be found in the Faculty Handbook at https://www.amherst.edu/academiclife/dean_faculty/fph/fachandbook/facresponsibilities/academicregulations.

The Title IX Committee, appointed by the President, completed a comprehensive review of college sexual harassment statements and definitions. Effective May 2013, a detailed **Sexual Misconduct Policy**, including conduct procedures, definitions and resources was codified and is included in Appendices B and C.

### I. PURPOSE AND SCOPE OF POLICY
### 1. Statement of Institutional Values

Sexual misconduct of any form is a violation of a person's rights, dignity and integrity. An act of sexual misconduct represents a fundamental failure by a community member to recognize and respect the intrinsic worth and dignity of another. Acts of sexual misconduct are harmful and illegal and will not be tolerated at Amherst College. Such acts corrupt the integrity of the educational process, are contrary to the mission and values of the Amherst College community and are against college policy.

All members of the Amherst College community should be free from sexual misconduct in the classroom; the social, recreational and residential environment; and the workplace. The college seeks to foster a climate free from sexual misconduct through a coordinated education and prevention program and the promulgation of clear and effective policies, as well as investigative and grievance procedures that are prompt, equitable and accessible to all. In response to any reported sexual misconduct, the college will take all appropriate steps to eliminate the misconduct, prevent its recurrence and address its effects.

In order to foster a climate of respect for oneself and for one another and provide for the safety and security of our community, the college expects all community members to take action to prevent acts of sexual misconduct. Creating a safe campus environment is the responsibility of all members of the college community, both individually and collectively.

In order to foster a climate that encourages reporting of sexual misconduct, the college will actively educate the community, respond to all allegations promptly, will provide interim measures to address safety and emotional well-being and will act in a manner that recognizes the inherent dignity of the individuals involved.

In order to achieve equitable results, the college will carefully review and/or investigate all reports with an earnest intent to understand the perspective and experiences of each individual involved, and provide for fair and impartial evaluation and resolution.

## 2. Purpose of Policy

The purpose of this policy is to provide the Amherst College community with a clearly articulated set of behavioral standards, common understandings of definitions and key concepts and descriptions of prohibited conduct. The policy applies to all community members, including students, faculty and staff. It is intended to protect and guide students, faculty and staff who have been affected by sexual misconduct, whether as a Complainant, a Respondent or a third party.

When used in this policy, "Complainant" refers to the individual who believes him- or herself to have been the subject of sexual misconduct. "Respondent" refers to the individual who has been accused of sexual misconduct. "Third party" refers to any other participant in the process, including a witness to the incident or an individual who makes a report on behalf of someone else. "Report" refers to any incident or concern regarding sexual misconduct that is reported to the college. A "complaint" is an allegation of sexual misconduct filed against a faculty or staff member or student that initiates the appropriate disciplinary process.

In addition to defining sexual harassment and the forms of sexual misconduct that violate the standards of our community, this policy will also:

- Identify resources and support for all members of the college community;
- Identify the Title IX Coordinator, Deputy Coordinators and their roles;
- Provide information about where a college community member can obtain support or access resources in a confidential manner;
- Provide information about how a college community member can make a report on campus or off campus; and
- Provide information about how a report against a college community member will be investigated, evaluated and resolved.

## 3. Scope

As stated above, this policy applies to all members of the Amherst College community, including students, employees, visitors and independent contractors. When used in this policy, "employee" generally refers to both staff and faculty members, although there are separate complaint processes delineated for non-faculty employees and for faculty members. Vendors, independent contractors, visitors and others who conduct business with the college or on college property are also expected to comply with this policy.

All college community members are responsible for their actions and behavior, whether the conduct in question occurs on campus or in another location. Members of the Amherst College community have a responsibility to adhere to college policies and local, state and federal law.

As a result, this policy applies both to on-campus and off-campus conduct. In particular, off-campus behaviors that have an actual or potential adverse impact on any member of the college community or the college fall under this policy.

Amherst College has joined with Smith College, Mount Holyoke College, Hampshire College and the University of Massachusetts to form the Five Colleges. Amherst College students, when studying or visiting on the campus of one of the Five Colleges, riding a Five Colleges bus or attending a college-related event for one of the Five Colleges, will be subject to Amherst policies as well as the policies of the visited institution. The student conduct procedures of the institution at which the accused student is enrolled shall govern.

(See the **Regulations and Procedures** section in the **Five College Cooperation** section of the online Student Handbook, found at www.amherst.edu/campuslife/deanstudents/handbook/fivecolleges.)

Any individual may make a report alleging a violation of this policy. The college will provide resource options and respond promptly and equitably to all allegations of sexual misconduct. The college will engage in a Title IX review throughout which it is committed to maintaining fairness for all parties and to balancing the needs and interests of the individuals involved with the safety of the community as a whole.

#### 4. Coordination with Non-Discrimination

The college recognizes that harassment related to an individual's sex, sexual orientation, gender identity or gender expression can occur in conjunction with misconduct related to an individual's race, color, ethnicity, national origin, religion, age or disability. Targeting individuals on the basis of these characteristics is also a violation of the community standards. Under these circumstances, the college will coordinate the investigation and resolution efforts (see **Section X: Resolution Process for Complaints**) to address harassment related to the targeted individual's sex, sexual orientation, gender identity or gender expression together with the conduct related to the targeted individual's race, color, ethnicity, national origin, religion, age or disability.

### II. NOTICE OF NON-DISCRIMINATION

The college is committed to establishing and maintaining an environment free of all forms of harassment and discrimination for all college community members. The college does not discriminate on the basis of race, color, ethnicity, national origin, age, sex, sexual orientation, gender identity or expression, physical or mental disability, religion or any other protected class.

The college does not discriminate on the basis of sex in its educational, extracurricular, athletic or other programs or in the context of employment. Sexual misconduct, including sexual harassment as defined in this policy, is a form of sex discrimination that unjustly deprives a person of equal treatment. It is prohibited by Title IX of the Education Amendments of 1972, a federal law that provides that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

Sexual harassment is also prohibited under Title VII of the Civil Rights Act of 1964, Massachusetts General Laws Chapter 151B and other applicable statutes.

This policy prohibits sexual misconduct against all Amherst community members of any gender or sexual orientation. This policy also prohibits gender-based harassment that does not involve conduct of a sexual nature.

### III. COLLEGE STATEMENT ON PRIVACY

The college is committed to maintaining the privacy of all individuals involved in a report of sexual misconduct. In any Title IX review of an allegation of sexual misconduct, every effort will be made to protect the privacy and interests of the individuals involved in a manner consistent with the need for a thorough review of the allegation. Such a review is essential to protecting the safety of the Complainant, the Respondent and the broader campus community and to maintaining an environment free from sexual discrimination.

At all times, the privacy of the parties will be respected and safeguarded. Information related to a report of misconduct will be shared only with those college employees who "need to know" in order to assist in the investigation and/or resolution of the complaint. All college employees who are involved in the Title IX review process, including conduct board hearing members, have received specific training regarding the safeguarding of private information. Students or employees wishing to obtain confidential assistance

27

through on-campus or off-campus resources without making a report to the college may do so by speaking with professionals who are obligated by law to maintain confidentiality. These professionals are identified in the **Resources** section of this policy. As a reminder, students may seek confidential assistance on campus through Health Services, the Counseling Center or Religious Life Advisors. Employees may seek confidential assistance through the Employee Assistance Plan. Community resources include the Center for Women and Community, University Health Services and the New England Learning Center for Women in Transition.

When the college has received a report of sexual misconduct, but the Complainant requests that his/her identity remain confidential or that the college not pursue an investigation, the college will balance this request with its responsibility to provide a safe and non-discriminatory environment for all college community members. The college will take all reasonable steps to investigate and respond to the complaint consistent with the request for confidentiality or request not to pursue an investigation (see **Request for Confidentiality in Section VIII.5.**) At all times, the college will seek to respect the request of the Complainant, and where it cannot do so, the college will consult with the Complainant and keep him/her informed about the chosen course of action.

If a report of misconduct discloses an immediate threat to the college campus community, the college may issue a timely notice of the conduct to the community to protect the health or safety of the broader campus community. This notice will not contain any biographical or other identifying information. Immediately threatening circumstances include, but are not limited to, recently reported incidents of sexual misconduct that include the use of force, a weapon or other circumstances that represent a serious and ongoing threat to college students, faculty, administrators, staff or visitors. All resolution proceedings are conducted in compliance with the requirements of FERPA, the Clery Act, Title IX and college policy. No information shall be released from such proceedings except as required or permitted by law or college policy.

## IV. PROHIBITED CONDUCT AND DEFINITIONS

The college prohibits sexual misconduct. Sexual misconduct is a broad term that includes but is not limited to sexual harassment, sexual violence, sexual exploitation, stalking, cyber-stalking, bullying and cyber-bullying, aiding or facilitating the commission of a violation, and retaliation.

Consistent with the values of an educational and employment environment free from harassment based on sex, the college also prohibits gender-based harassment, which may include acts of verbal, nonverbal or physical aggression, intimidation or hostility based on sex or sex-stereotyping, even if those acts do not involve conduct of a sexual nature.

### 1. Definition of Sexual Harassment

Sexual harassment is any unwelcome sexual advance, request for sexual favors, or other unwelcome verbal or physical conduct of a sexual nature when:

- Submission to or rejection of such conduct is made, either explicitly or implicitly, a term or condition of an individual's employment, evaluation of academic work or participation in social or extracurricular activities;
- Submission to or rejection of such conduct by an individual is used as the basis for decisions affecting the individual; or
- Such conduct has the purpose or effect of unreasonably interfering with an individual's work or academic performance by creating an intimidating, hostile, humiliating, demeaning or sexually offensive working, academic or social environment. The effect will be evaluated based on the perspective of a reasonable person in the position of a Complainant.

A single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe. The more severe the conduct, the less need there is to

show a repetitive series of incidents to provide a hostile environment, particularly if the harassment is physical.

## 2. Forms of Prohibited Sexual Harassment

Sexual harassment is prohibited. In some cases, sexual harassment is obvious and may involve an overt action, a threat or reprisal. In other instances, sexual harassment is subtle and indirect, with a coercive aspect that is unstated.

Sexual harassment can take many forms:

- It can occur between equals (e.g., student to student, staff to staff, faculty member to faculty member, visitor/contracted employee to staff) or between persons of unequal power status (e.g. supervisor to subordinate, faculty member to student, coach to student-athlete, student leader to first-year student). Although sexual harassment often occurs in the context of an exploitation of power by the individual with the greater power, a person who appears to have less power in a relationship can also commit sexual harassment (e.g., student harassing faculty member).
- It can be committed by an individual or may be a result of the collective actions of an organization or group.
- It can be committed against an individual, an organization or a group.
- It can be committed by an acquaintance, a stranger or someone with whom the Complainant has a personal, intimate or sexual relationship.
- It can occur by or against an individual of any sex, gender identity, gender expression or sexual orientation.
- It does NOT have to include intent to harm, be directed at a specific target or involve repeated incidents.

Examples of behavior that might be considered misconduct include, but are not limited to:

- Unwanted or inappropriate sexual innuendo, propositions, sexual attention or suggestive comments and gestures; humor and jokes about sex or gender-specific traits; sexual slurs or derogatory language directed at another person's sexuality or gender; insults and threats based on sex or gender; and other oral, written or electronic communications of a sexual nature that an individual communicates is unwanted and unwelcome;
- Written graffiti or the display or distribution of sexually explicit drawings, pictures or written materials; sexually charged name-calling; sexual rumors or ratings of sexual activity/performance; the circulation, display or creation of emails or websites of a sexual nature;
- Non-academic display or circulation of written materials or pictures degrading to one or more individuals or gender group (It is expected that instructors will offer appropriate warning regarding the introduction of explicit and triggering materials used in the classroom.);
- Inappropriate or unwelcome physical contact or suggestive body language, such as touching, patting, pinching, hugging, kissing or brushing against an individual's body;
- Undue and unwanted attention, such as repeated inappropriate flirting, inappropriate or repetitive compliments about clothing or physical attributes, staring, or making sexually oriented gestures;
- Physical coercion or pressure of an individual to engage in sexual activity or punishment for a refusal to respond or comply with sexual advances;
- Change of academic or employment responsibilities (increase in difficulty or decrease of responsibility) based on sex, gender identity/expression or sexual orientation;

29

- Use of a position of power or authority to: (1) threaten or punish, either directly or by implication, for refusing to tolerate harassment, for refusing to submit to sexual activity or for reporting harassment; or (2) promise rewards in return for sexual favors;
- Sexual assault;
- Abusive, disruptive or harassing behavior, verbal or physical, which endangers another's mental or physical health, including but not limited to threats, acts of violence or assault based on gender and/or in the context of intimate partner violence;
- Demeaning verbal or other expressive behavior of a sexual or gendered nature in instructional settings; and
- Acts of verbal, nonverbal or physical aggression, intimidation or hostility based on sex or sex-stereotyping. Harassment for exhibiting what is perceived as a stereo-typical characteristic for one's sex, or for failing to conform to stereotypical notions of masculinity and femininity, regardless of actual or perceived sexual orientation or gender identity of the harasser or target.

### 3. Additional Forms of Prohibited Sexual Misconduct

Sexual misconduct may vary in its severity and consists of a range of behaviors. The following descriptions represent sexual behaviors that violate Amherst College's community standards and a person's rights, dignity and integrity.

- Sexual Violence: Physical sexual acts perpetrated against a person's will or where a person is incapable of giving consent. This includes rape, sexual assault, battery and sexual coercion. Sexual violence may involve individuals who are known to one another or have an intimate and/or sexual relationship, or may involve individuals not known to one another. Examples include, but are not limited to:
  – Having or attempting to have sexual intercourse with another individual without consent. Sexual intercourse includes vaginal or anal penetration, however slight, with a body part or object or oral copulation by mouth-to-genital contact.
  – Having or attempting to have sexual contact with another individual without consent. Sexual contact includes kissing, touching the intimate parts of another, causing the other to touch one's intimate parts or disrobing of another without permission. Intimate parts may include the breasts, genitals, buttocks, mouth or any other part of the body that is touched in a sexual manner.
- Sexual Exploitation: An act or acts committed through non-consensual abuse or exploitation of another person's sexuality for the purpose of sexual gratification, financial gain, personal benefit or advantage or any other non-legitimate purpose. The act or acts of sexual exploitation are prohibited even though the behavior does not constitute one of the other sexual misconduct offenses. Sexual exploitation may involve individuals who are known to one another, have an intimate or sexual relationship, and/or individuals not known to one another. Examples include, but are not limited to:
  – Observing another individual's nudity or sexual activity or allowing another to observe consensual sexual activity without the knowledge and consent of all parties involved;
  – Non-consensual streaming of images, photography, video or audio recording of sexual activity or nudity, or distribution of such without the knowledge and consent of all parties involved;
  – Prostituting another individual;
  – Knowingly exposing another individual to a sexually transmitted disease or virus without his or her knowledge; and
  – Inducing incapacitation for the purpose of making another person vulnerable to non-consensual sexual activity.

- Stalking: A course of conduct involving more than one instance of unwanted attention, harassment, physical or verbal contact, or any other course of conduct directed at an individual that could be reasonably regarded as likely to alarm or place that individual in fear of harm or injury, including physical, emotional or psychological harm. This includes cyber-stalking, a particular form of stalking in which electronic media such as the Internet, social networks, blogs, cell phones, texts or other similar devices or forms of contact are used to pursue, harass or make unwelcome contact with another person. Stalking and cyber-stalking may involve individuals who are known to one another or have an intimate or sexual relationship, or may involve individuals not known to one another.

- Aiding or Facilitating: Aiding, facilitating, promoting or encouraging the commission of a violation under this policy. Aiding or facilitating may also include failing to take action to prevent an imminent act when it is reasonably prudent and safe to do so. Taking action may include direct intervention, calling Amherst College Police or local law enforcement, or seeking assistance from a person in authority.

- Retaliation: Acts or attempts to retaliate against the Complainant, Respondent or any individual or group of individuals involved in the investigation and/or resolution of an allegation of sexual misconduct. Retaliation can be committed by any individual or group of individuals, not just a Respondent or Complainant. Retaliation may include continued abuse or violence, other forms of harassment, slander and libel.

## 4. Statement on Consent, Coercion, Incapacitation and Alcohol

**Consent to engage in sexual activity must be knowing and voluntary.** Consent to engage in sexual activity must exist from the beginning to end of each instance of sexual activity and for each form of sexual contact. Consent to one form of sexual contact does not constitute consent to all forms of sexual contact. For example, an individual may agree to kiss but choose not to engage in touching of the intimate parts or sexual intercourse. An individual should obtain consent before moving from one act to another.

**Consent consists of an outward demonstration indicating that an individual has freely chosen to engage in sexual activity.** Consent is demonstrated through mutually understandable words and/or actions that clearly indicate a willingness to engage freely in sexual activity. Relying on non-verbal communication can lead to misunderstandings. Consent may not be inferred from silence, passivity, lack of resistance or lack of active response alone. A person who does not physically resist or verbally refuse sexual activity is not necessarily giving consent. In the absence of an outward demonstration, consent does not exist. If at any time it is reasonably apparent that either party is hesitant, confused or uncertain, both parties should stop and obtain mutual verbal consent before continuing sexual activity.

**A current or previous dating or sexual relationship, by itself, is not sufficient to constitute consent.** Even in the context of a relationship, there must be mutually understandable communication that clearly indicates willingness to engage in sexual activity each time such activity occurs.

**Consent may be withdrawn by either party at any time.** Withdrawal of consent must also be outwardly demonstrated by words or actions that clearly indicate a desire to end sexual activity. Once withdrawal of consent has been expressed, sexual activity must cease.

**In the state of Massachusetts, consent can never be given by minors under the age of 16.**

**Consent is not effective if it results from the use or threat of physical force, intimidation or coercion, or any other factor that would eliminate an individual's ability to exercise his or her own free will to choose whether or not to have sexual contact.** Coercion includes the use of pressure and/or oppressive behavior, including express or

implied threats of harm and/or severe and/or pervasive emotional intimidation, which places an individual in fear of immediate or future harm or physical injury or causes a person to engage in unwelcome sexual activity. A person's words or conduct amount to coercion if they wrongfully impair the other's freedom of will and ability to choose whether or not to engage in sexual activity.

**An individual who is incapacitated is not able to make rational, reasonable judgments and therefore is incapable of giving consent.** Incapacitation is the inability, temporarily or permanently, to give consent, because the individual is mentally and/or physically helpless due to drug or alcohol consumption, either voluntarily or involuntarily, or the individual is unconscious, asleep or otherwise unaware that the sexual activity is occurring. In addition, an individual is incapacitated if the individual demonstrates that they are unaware of where they are, how they got there, or why or how they became engaged in a sexual interaction. Where alcohol is involved, incapacitation is a state beyond drunkenness or intoxication. Some indicators of incapacitation may include, but are not limited to, lack of control over physical movements, lack of awareness of circumstances or surroundings or the inability to communicate for any reason. An individual may experience a blackout state in which he/she appears to be giving consent but does not actually have conscious awareness or the ability to consent. It is especially important, therefore, that anyone engaging in sexual activity be aware of the other person's level of intoxication. The relevant standard that will be applied is whether the Respondent knew, or a sober reasonable person in the same position should have known, that the other party was incapacitated and therefore could not consent to the sexual activity.

The college considers sexual contact while under the influence of alcohol to be risky behavior. Alcohol impairs a person's decision-making capacity, awareness of the consequences and ability to make informed judgments. Being intoxicated or impaired by drugs or alcohol is never an excuse for sexual misconduct and does not excuse one from the responsibility to obtain consent.

## V. RESOURCES

### 1. Overview

The college is committed to treating all individuals with dignity, care and respect. Any individual affected by sexual misconduct, whether as a Complainant, a Respondent or a third party, will have equal access to support and counseling services through the college. The college recognizes that any individual involved in an incident of sexual misconduct may have questions and we encourage Amherst community members to seek the support of campus and community resources. The college can provide guidance in making decisions, obtaining information about available resources and assisting either party in the event that a report and/or resolution is pursued. Individuals are encouraged to use all available resources, regardless of whether the incident occurred recently or in the past.

Complainants, Respondents and third parties can expect:

- The opportunity to meet with the Title IX or Deputy Title IX Coordinator or a member of the Title IX team to answer questions regarding the college's complaint processes for students and employees.
- Notice of confidential resources, including health care and mental health counseling services, on campus and in the local community.
- Notice of the option to pursue law enforcement action and to be assisted by Amherst College Police or other college officials in accessing and communicating with such authorities. This notice will include a discussion of the importance of the preservation of evidence.
- The opportunity to request that the college take steps to prevent unnecessary or unwelcome contact or communication with another member of the Amherst community.

- The right to be free from retaliation. Any concerns of retaliatory behavior should be immediately reported to Amherst College Police or the Title IX or Deputy Title IX Coordinator.

## 2. Confidential Resources and Support

The college encourages all Amherst community members to report an incident of sexual misconduct. The college recognizes, however, that there are many barriers to reporting, both individual and societal, and not every individual will choose to make a formal report with the college or with local law enforcement. For those individuals who are not prepared to make a report, there are several confidential resources available for students, staff and faculty. Individuals seeking to talk to someone about an incident of sexual misconduct in a confidential manner without making a report to the college or triggering any investigation or action by the college may utilize the following confidential medical, mental health and clerical resources. These resources hold a statutorily protected confidentiality that prohibits the release of an individual's information without that individual's express consent (except under limited circumstances that pose an imminent danger to the individual or to others.) The following resources are confidential:

| On Campus | Off Campus |
|---|---|
| **Health Services**<br>(413) 542-2266<br>Services are available during regular office hours.<br><br>**Counseling Center**<br>(413) 542-2354<br>Counselors are available during regular office hours. The center is staffed by medical, psychiatric and psychological professionals.<br><br>**Religious Life Advisors**<br>(413) 542-8149<br>Religious Life Advisors are available 24 hours a day through the Dean on Duty or Amherst College Police.<br><br>**For Employees:**<br>Employee Assistance Plan<br>(800) 828-6025 | **Center for Women and Community**<br>(413) 545-0800<br>The CWC provides confidential crisis counseling 24 hours a day relating to rape or sexual assault.<br><br>**University Health Services**<br>(413) 577-5000<br>Open daily 8 a.m. to 8 p.m.<br><br>**New England Learning Center for Women in Transition**<br>(413) 772-0806<br>A confidential rape crisis hotline accessible 24 hours a day. |

## 3. Campus Resources

In addition to the confidential resources listed above, all Amherst community members have access to a variety of resources provided by the college that can provide crisis intervention services, counseling, academic support and medical services. All of the staff and faculty listed below are trained to support individuals affected by sexual misconduct and to coordinate with the Title IX Coordinator consistent with the college's commitment to a safe and healthy educational environment. While not bound by confidentiality, these resources will nevertheless maintain the privacy of an individual's information within the limited circle of those involved in the Title IX resolution process.

| | |
|---|---|
| **Amherst College Police Department** (413) 542-2111 ACPD is available 24 hours a day. | **Title IX Deputy Coordinators** Available during regular office hours. Susie Mitton Shannon (students) (413) 542-2337 Jennifer Hughes (athletics) (413) 542-2362 Amanda Collings Vann (students) (413) 542-2337 Gregory Call (faculty) (413) 542-2334 Maria-Judith Rodriguez (staff, administration and visitors) (413) 542-2372 |
| **Dean of Students Office/ Dean on Duty** (413) 542-2337 Available during regular office hours and can assist with academic concerns, changes in housing or other accommodations and referrals to other resources. Members of the Dean of Students Office are also available 24 hours a day by calling Amherst College Police. | |
| **Interim Dean of Student Conduct** Susie Mitton Shannon (413) 542-2337 Available during regular office hours for students interested in receiving information on filing a complaint through the college. | **Resident Counselors** RCs are students living in the residence halls that are employed by Residential Life and trained to refer students to campus resources. |
| **Office of General Counsel** Lisa Rutherford (413) 542-2234 Available during regular office hours. | **Peer Advocates of Sexual Respect** The Peer Advocates of Sexual Respect are students who receive intensive training and on-going supervision to act as an educational resource and referral source for students who are in need of support on issues of sexuality, relationships, trauma, violence and sexual respect or misconduct.. |
| **Title IX Coordinator** See https://www.amherst.edu/aboutamherst/sexual_respect/whom-can-i-call. | |

**4. Community Resources**

Students, faculty and staff may also access resources located in the local community. These organizations can provide crisis intervention services, counseling, medical attention and assistance in interfacing with the criminal justice system. All individuals are encouraged to utilize the resources that are the best suited to their needs, whether on or off campus. In general, off-campus resources can provide assistance to individuals wishing to make a report to the college but will not notify the college without the consent of the Complainant. A list of resources in the local community is provided in **Section V.2.**

**VI. REPORTING**

All college employees, including faculty, staff and administrators, student employees who have a responsibility for student welfare and student volunteers who have a responsibility for student welfare, are required to share with a member of the Title IX team any report of sexual misconduct they receive or of which they become aware.

Examples of students who have a duty to share the information with the centralized Title IX team include, but are not limited to, Resident Counselors, Peer Advocates of Sexual Respect and Student Health Educators.

All Amherst community members, even those who are not obligated by this policy, are strongly encouraged to report information regarding any incident of sexual misconduct to a member of the Title IX team.

The Title IX team, working with the Title IX Coordinator, will ensure that the college responds to all reports in a timely, effective and consistent manner. The Title IX team

consists of the Amherst College Chief of Police, Title IX Coordinator, Deputy Title IX Coordinator(s), a representative of the Dean of Students Office, the Dean of the Faculty and the Director of Human Resources, as applicable. The team is charged with the review, investigation and resolution of all reports to ensure consistent responsiveness and the integrated provision of interim measures to support the individuals involved and to protect the campus community. It is only through this consistent and informed response that we create a culture of accountability and break the culture of silence. The Title IX team is positioned to provide seamless support, assess campus safety and effectively respond to allegations of sexual misconduct.

The college will promptly and thoroughly investigate and respond to all reports of sexual misconduct. The college will respond to all reports in an integrated, consistent manner that treats each individual with dignity and respect. The college will approach each report with an earnest intent to understand the perspective and experiences of each individual involved in order to ensure fair and impartial evaluation and resolution.

The college is committed to providing a variety of welcoming and accessible means so that all instances of sexual misconduct will be reported. The college also recognizes that the decision whether or not to report sexual misconduct is personal and that there are many barriers to reporting, both individual and societal. Not every individual will be prepared to make a report to the college or to law enforcement, and individuals are not expected or required to pursue a specific course of action.

An incident does not have to occur on campus to be reported to the college. Off-campus conduct that adversely affects the college or the Amherst community also falls under this policy.

An individual does not have to decide whether or not to request disciplinary action at the time the report is made. The college recognizes that choosing to make a report, and deciding how to proceed after making the report, can be a process that unfolds over time. The college will respect an individual's autonomy in making these important decisions and provide support that will assist each individual in making that determination.

As outlined in the **Resources** section of this policy, there are confidential resources on campus and in the community available to individuals not wishing to make a report to the college. Information shared with these confidential resources will not be reported to the college.

As outlined in the **College Statement on Privacy**, the college respects the privacy interests of students, faculty and staff. All information reported will be shared only with those college employees who will assist in the investigation and/or resolution of the complaint.

### 1. Emergency/Immediate Reporting Options

The college encourages all individuals to seek assistance from a medical provider and/ or law enforcement immediately after an incident of sexual misconduct. This is the best option to ensure preservation of evidence and to begin a timely investigative and remedial response. The college will assist any Amherst community member to get to a safe place and will provide transportation to the hospital, coordination with law enforcement, and information about the college's resources and complaint processes.

Assistance is available from the college 24 hours a day year-round by calling the Amherst College Police. Any individual can request that a member of the Amherst College Police respond and take a report, or request to speak with a Dean on Duty or a member of the Counseling Center. There is no requirement that an individual file an incident report with the Amherst College Police in order to speak with a Dean on Duty or a member of the Counseling Center.

A medical provider can provide emergency and/or follow-up medical services, and the ability to discuss any health care concerns related to the incident in a confidential medical setting may bring peace of mind. The medical exam has two goals: first, to

diagnose and treat the full extent of any injury or physical effect (sexually transmitted infection or pregnancy) and second, to properly collect and preserve evidence. There is a limited window of time (typically 72 to 96 hours) following an incident of sexual assault to preserve physical and other forms of evidence. Taking the step to gather evidence immediately does not commit an individual to any course of action. The decision to seek medical attention and gather any evidence will remain confidential and preserve the full range of options to seek resolution through the college's complaint processes or through the pursuit of criminal action.

| Emergency Response | Health and Safety |
|---|---|
| 911 **Amherst College Police Department** (413) 542-2111 **Amherst (Town) Police Department** (413) 259-3000 | **Amherst CollegeHealth Services** (413) 542-2266 **Cooley Dickinson Hospital** (413) 582-2000 |

**2. Campus Reporting Options**

The college recognizes that a student or employee may choose to report sexual misconduct to any trusted employee of the college. For example, a student may choose to confide in a Resident Counselor, a faculty member or a coach, all of whom are considered "responsible employees" who must report the incident under this policy. An employee may choose to confide in a supervisor, also considered a "responsible employee." Under this policy, any employee who receives a report of sexual misconduct must share the report with the Title IX Coordinator or a member of the Title IX team. The Title IX Coordinator and Title IX team are specifically charged with investigating and responding to allegations of sexual misconduct.

To enable the college to respond to all reports in a prompt and equitable manner, the college encourages all individuals to directly report any incident of sexual misconduct to the Title IX Coordinator or a member of the Title IX team:

| *For Complaints Against Any Amherst Community Member:* | *For Complaints Against Students:* |
|---|---|
| **Amherst College Police** (413) 542-2111 Available 24 hours a day. **Title IX Coordinator** See: https://www.amherst.edu/aboutam-herst/sexual_respect/whom-can-i-call. | **Sexual Respect Educator and Deputy Title IX Coordinator** Amanda Collings Vann (413) 542-2337 Available during regular office hours. |
| *For Complaints Against Faculty:* | **Head Coach of Women's Soccer and Deputy Title IX Coordinator** Jen Hughes (413) 542-2362 Available during regular office hours. |
| **Dean of the Faculty and Deputy Title IX Coordinator** Gregory Call (413) 542-2334 Available during regular office hours. | **Interim Dean of Student Conduct and Deputy Title IX Coordinator** Susie Mitton Shannon (413) 542-2337 Available during regular office hours. |

| For Complaints Against Staff, Administration and Visitors:<br><br>**Director of Human Resources and Deputy Title IX Coordinator**<br>Maria-Judith Rodriguez<br>(413) 542-2372<br>Available during regular office hours. | Dean of Students/Dean on Duty<br>(413) 542-2337<br>Available during regular office hours or 24 hours a day by calling Amherst College Police |
|---|---|

### 3. Anonymous Reporting

Any individual may make an anonymous report concerning an act of sexual misconduct. An individual may report the incident without disclosing his/her name, identifying the Respondent or requesting any action. Depending on the level of information available about the incident or the individuals involved, however, the college's ability to respond to an anonymous report may be limited. Anonymous reports may be made by telephone at (888) 497-1022 or online at www.amherst.ethicspoint.com. EthicsPoint is a service that allows anyone to report suspected misconduct or other issues with complete confidentiality. This service allows the person making the report and college administrators to confer about additional details, while the reporting party's identity remains confidential. All reports will go to the Title IX Coordinator.

### 4. Reporting Patterns of Sexual Harassment

In the event that an individual believes that he or she may be experiencing behavior that points to a pattern of sexual harassment, he or she should document that behavior and report it to a member of the Title IX team.

### 5. Time Frame for Reporting

Individuals are encouraged to report sexual misconduct immediately in order to maximize the college's ability to respond promptly and equitably. The college does not, however, limit the timeframe for reporting. The college will not be able to pursue disciplinary action against an individual who is no longer affiliated with the college. Under those circumstances, the college will still conduct a Title IX review.

### 6. Coordination with Law Enforcement

The college encourages Complainants to pursue criminal action for incidents of sexual misconduct that may also be crimes under Massachusetts law. In every case of sexual violence, the college, through the Chief of Amherst College Police, will notify the Amherst (Town) Police Department of the allegations. The college will also assist a Complainant in making a criminal report and will cooperate with law enforcement agencies if a Complainant decides to pursue the criminal process to the extent permitted by law. However, a Complainant may also choose not to pursue criminal action, and under most circumstances, the Amherst Police Department will not force a Complainant to pursue charges if he/she is not willing to do so.

The college's policy, definitions and burden of proof may differ from Massachusetts criminal law. A Complainant may seek resolution through the college's complaint process, may pursue criminal action, may choose one but not the other, or may choose both. Neither law enforcement's determination whether or not to prosecute a Respondent nor the outcome of any criminal prosecution are determinative of whether sexual misconduct under this policy has occurred. Proceedings under the college's Sexual Misconduct Policy may be carried out prior to, simultaneously with or following civil or criminal proceedings off campus.

**7. Amnesty for Students who Report Sexual Misconduct**

The college encourages reporting and seeks to remove any barriers to reporting by making the procedures for reporting transparent and straightforward. The college recognizes that an individual who has been drinking or using drugs at the time of the incident may be hesitant to make a report because of potential Honor Code consequences for his/her own conduct. An individual who reports sexual misconduct, either as a Complainant or as a third-party witness, will not be subject to disciplinary action by the college for his/her own personal consumption of alcohol or drugs at or near the time of the incident, provided that any such violations did not and do not place the health or safety of any other person at risk. The college may, however, initiate an educational discussion or pursue other educational remedies regarding alcohol or other drugs. The amnesty policy applies to the college's Student Conduct Process.

**8. Bystander Intervention**

The college expects all community members to take reasonable and prudent actions to prevent or stop an act of sexual misconduct. Taking action may include direct intervention, calling law enforcement or seeking assistance from a person in authority. Community members who choose to exercise this positive moral obligation will be supported by the college and protected from retaliation.

**9. Statement Against Retaliation**

It is a violation of college policy to retaliate in any way against an individual or a group because the individual or group of individuals reported an allegation of sexual misconduct.

The college recognizes that retaliation can take many forms, may be committed by an individual or a group against an individual or a group and that a Respondent can also be the subject of retaliation by the Complainant or a third party. The college will take immediate and responsive action to any report of retaliation and may pursue disciplinary action as appropriate. An individual reporting sexual misconduct is entitled to protection from any form of retaliation following a report that is made in good faith, even if the report is later not proven.

**VII. INTERIM MEASURES**

Upon receipt of a report, the college will provide interim support and reasonable protective measures to prevent further acts of misconduct and to provide a safe educational and work environment. The college will determine the necessity and scope of any interim measures. Even when a Complainant or Respondent does not specifically request that protective action be taken, the college may choose to impose interim measures at its discretion to ensure the safety of any individual, the broader college community or the integrity of the review process.

Students seeking such assistance should speak with the Title IX Coordinator or a Deputy Title IX Coordinator for Students, who will coordinate such requests on the behalf of the student. The college will maintain contact with the parties to ensure that all safety and emotional and physical well-being concerns are being addressed.

All individuals are encouraged to report concerns about failure of another individual to abide by any restrictions imposed by an interim measure. The college will take immediate and responsive action to enforce measures previously ordered or implemented by the college.

The college may impose any remedy that can be tailored to the involved parties to achieve the goals of this policy, even if not specifically listed here. The range of interim measures may include:

**No-Contact Order:** A Complainant or Respondent may request, or the college may impose, communication and contact restrictions to prevent further potentially

38

harmful interaction. These communication and contact restrictions generally preclude in-person, telephone, electronic or third-party communications. In some cases, an individual may also wish to consider an Abuse Prevention Order or a Harassment Prevention Order from the local courts. This is a civil proceeding independent of the college. If a court order is issued the college will, to the extent possible, assist the protected person in benefiting from the restrictions imposed by the court and will also facilitate on campus compliance with the order. The college may also limit an individual or organization's access to certain college facilities or activities as part of the no-contact order.

**Academic, Employment or Residence Modifications:** A Complainant or Respondent may request an academic or employment accommodation or a change in residence after a report of sexual misconduct. An individual who requests assistance in changing their academic or living situation after an incident of sexual misconduct will receive appropriate and reasonably available accommodations. These may include:

- Academic accommodations, including a change in class schedule, taking an incomplete, dropping a course without penalty, attending a class via Skype or other alternative means, providing an academic tutor or extending deadlines for assignments;
- Change of dormitory assignment;
- Change in work assignment or schedule;
- Providing an escort to ensure safe movement between classes and activities.

**Emotional Support:** The college will provide counseling services through the Counseling Center or will assist in providing a referral to off-campus agencies as detailed in the **Campus Resources** and **Community Resources** sections of this policy. Counseling and emotional support is available to any member of the campus community.

**Interim Separation:** Where the report of sexual misconduct poses an ongoing risk of harm to the safety or well-being of an individual or members of the campus community, the college may place an individual or organization on interim suspension or impose leave for an employee. Pending resolution of the complaint, the individual or organization may be denied access to campus. When interim suspension or leave is imposed, the college will make reasonable efforts to complete the investigation and resolution within an expedited time frame.

## VIII. TITLE IX REVIEW
### 1. Role of the Title IX Coordinator

The Title IX Coordinator oversees the college's centralized review, investigation and resolution process for reports of sexual misconduct and coordinates the college's compliance with Title IX. The Title IX Coordinator is supported by several college administrators who serve as Deputy Title IX Coordinators. Each is knowledgeable and trained in state and federal laws that apply to matters of sexual harassment, as well as college policy and procedure.

The Title IX and Deputy Title IX coordinators can be contacted by telephone, by email or in person during regular office hours. For a comprehensive list, see https://www.amherst.edu/aboutamherst/sexual_respect/whom-can-i-call.

The duties and responsibilities of the Title IX and Deputy Title IX Coordinators include training, education and climate checks as well as the oversight of procedures that promptly and equitably eliminate sexual harassment, prevent its recurrence and address its effects on individuals and our community. The Title IX and Deputy Title IX Coordinators will:

- Oversee the investigation and resolution of all reports of sexual misconduct;
- Meet with any individual, whether a Complainant, a Respondent or a third party, to discuss interim measures, resources and procedural options on and off campus;

- Ensure prompt and equitable resolutions that comply with all requirements and timeframes specified in the complaint procedures;
- Conduct ongoing and annual climate checks, tracking and monitoring of sexual misconduct allegations on campus; and
- Coordinate all training, education and prevention efforts.

## 2. Role of the Title IX Team

While a report may emerge through many sources, the college is committed to ensuring that all reports are brought to the college's Title IX team. This interdepartmental team, led by the Title IX Coordinator, ensures consistent application of the policy to all individuals and allows the college to respond promptly and equitably to eliminate the misconduct, prevent its recurrence and address its effects. The Title IX team coordinates the review, investigation and resolution of the report and ensures that all appropriate interim measures are implemented. Members of the Title IX team include the Title IX Coordinator, Deputy Title IX Coordinators, the Dean of Students, the Dean of Student Conduct, the Director of Human Resources, the Chief of Amherst College Police, the Dean of Faculty and others as may be necessary.

College policy requires that any employee who receives a report of sexual misconduct bring the report to the Title IX Coordinator or a member of the Title IX team.

The Title IX team oversees the resolution of reported misconduct through the college's complaint processes. The process will be determined by the role of the Respondent:

- Complaints against students will be resolved by the Student Complaint Process.
- Complaints against employees will be resolved by the Employee Complaint Process.
- Complaints against faculty will be resolved by the Faculty Complaint Process.

Each process is guided by the same principles of fairness and respect for all parties. Resources are available for both students and employees, whether as Complainants or Respondents, to provide guidance throughout the investigation and resolution of the complaint.

## 3. Initial Assessment

The college will address all reports of sexual misconduct. The Title IX team, under the leadership of the Title IX Coordinator, will oversee the college's Title IX review process.

In every report of sexual misconduct, the college, through a Title IX team member will make an initial assessment of any risk of harm to individuals or to the campus community and will take steps necessary to address those risks. These steps will include interim measures to provide for the safety of the individual and the campus community.

The college's responsibility to review and respond to all allegations of misconduct exists regardless of whether that review culminates in additional investigation or goes before a Hearing Board and exists independently of the criminal justice process.

## 4. Investigation

The Title IX team member may determine if an investigation of the report of sexual misconduct should be conducted. This determination is based on a variety of factors, such as the Complainant's wish to pursue disciplinary action, the risk posed to any individual or the campus community by not proceeding and the nature of the allegation. The Title IX team member may designate an investigator of his or her choosing. Any investigator used by the college, whether internal or external, must have specific training and experience investigating allegations of sexual misconduct.

The investigator will coordinate the gathering of information from the Complainant, the Respondent and any other individuals who may have information relevant to the

determination. The investigator will also gather any available physical or medical evidence, including documents, communications between the parties and other electronic records as appropriate. The investigator may also consider prior allegations of, or findings of responsibility for, sexual misconduct by the Respondent. In gathering such information, the investigator will comply with applicable laws and Amherst College policies. The investigation will be thorough, impartial and fair, and all individuals will be treated with appropriate sensitivity and respect.

As described in the **College Statement on Privacy** section, all college investigations will respect individual privacy concerns.

Information gathered during the investigation will be used to evaluate the responsibility of the Respondent, provide for the safety of the individual and the college campus community and impose remedies as necessary to address the effects of the alleged conduct. Any investigative report will serve as the foundation for all related resolution processes.

### 5. Request for Confidentiality

Where the college has received a report of sexual misconduct, but the Complainant requests that his/her identity remain confidential or that the college not pursue an investigation, the college must balance this request in the context of its responsibility to provide a safe and non-discriminatory environment for all college community members. The college will take all reasonable steps to investigate and respond to the complaint consistent with the request for confidentiality or request not to pursue an investigation, but its ability to investigate may be limited by the request for confidentiality. Under these circumstances, the college will weigh the request for confidentiality against the following factors: the seriousness of the alleged harassment, any potential threats to community safety, the respective ages and positions of the Complainant and the Respondent, whether there have been other harassment complaints against the Respondent, and the Respondent's right to receive information under applicable law.

At all times, the college will seek to respect the request of the Complainant, and where it cannot do so, the college will consult with the Complainant and keep him/her informed about the chosen course of action.

### 6. Time Frame for Resolution

The investigation and resolution (including appeal) of all reports will generally be completed within 60 to 90 days. Extenuating circumstances including the complexity and severity of a complaint may arise that require the complaint process to extend beyond 60 to 90 days. In general, a Complainant and Respondent can expect to receive periodic updates as to the status of the review or investigation.

In the event that the investigation and resolution exceed this time frame, the College will notify all parties of the need for additional time and best efforts will be made to complete the process in a timely manner.

## Appendix C: Procedures for Addressing Sexual Misconduct Complaints Against Students Under the Student Conduct Process

### I. INTRODUCTION

The college has established a Sexual Misconduct Policy that articulates the college's set of behavioral standards, common understandings of definitions and key concepts and descriptions of prohibited conduct. The policy also outlines the college's approach to addressing reports of sexual misconduct which may include responding to a complaint filed under the Student Conduct Process. Below are the procedures for adjudicating a sexual misconduct complaint against a student through the Student Conduct Process.

## II. PRELIMINARY MATTERS

### 1. Timing of Complaints:

So long as the Respondent is a student at the college as defined in the Student Conduct Process (see **Jurisdiction** section of the **Student Conduct Process**), there is no time limit to filing a complaint to engage the Student Conduct Process. However, students are strongly encouraged to report sexual misconduct in a timely manner to maximize the college's ability to obtain evidence and conduct a thorough, impartial and reliable investigation. Where the Respondent is a second-semester senior, the college may withhold that student's Amherst College degree pending conclusion of the student conduct proceedings.

### 2. Jurisdiction:

See the **Jurisdiction** section of the Student Honor Code.

### 3. Effect of Criminal Proceedings:

The filing and processing of a complaint of sexual misconduct is independent of any criminal investigation or proceeding. The college will not wait for the conclusion of any criminal investigation or proceedings to commence its own investigation and proceedings outlined herein. Neither law enforcement's determination whether or not to prosecute a Respondent nor the outcome of any criminal prosecution are determinative of whether sexual misconduct under the college policy occurred.

### 4. Effect of Pending Complaint on Respondent:

If the Respondent is a current student, no notation will be placed on the Respondent's transcript of a complaint or pending disciplinary action during the Student Conduct Process. If the Respondent withdraws from the college while a sexual misconduct complaint is pending, the Respondent's transcript will reflect a withdrawal and a notation of pending disciplinary action subject to modification to reflect the outcome of the disciplinary action.

### 5. Amnesty:

An individual who files a sexual misconduct complaint or serves as a third-party witness during the Student Conduct Process will not be subject to disciplinary action by the college for his or her own personal consumption of alcohol or drugs at or near the time of the alleged sexual misconduct, provided that such violations did not and do not place the health or safety of any other person at risk. The college may initiate educational discussion or pursue other educational remedies regarding alcohol or other drugs.

### 6. Advisor:

Complainant and Respondent both have the right to be assisted by an Advisor provided by the college during the Student Conduct Process. The Complainant will be offered an Advisor at the time the complaint is filed and the Respondent will be offered an Advisor at the time he or she is notified of the complaint. The Complainant and Respondent may select from the list maintained by the Dean of Students of trained Advisors or decline the assistance of an Advisor. An Advisor serves to guide the student through the pre-hearing and hearing process and may accompany the student to any meeting with a college employee and to the hearing. The Advisor is not an advocate for the student and may not direct questions to or otherwise address the Sexual Misconduct Hearing Board (Hearing Board) but may consult with the student that he or she is assisting.

### 7. Attorneys:

The Complainant and Respondent have the right to consult private attorneys, at their own expense, regarding a complaint. Attorneys cannot participate in the Hearing Board process. Attorneys may be present on campus during a hearing; however, they are required to remain outside of any hearing room. An attorney may be present to provide legal counsel to the Chair and to the Hearing Board members.

**8. Agreements Not Recognized by the College:**
Other than a judicial order, the college will not recognize agreements between the Complainant and Respondent in which the college did not participate.

**9. Time Frames:**
Generally the college will attempt to complete the process within 60 days. However, the time frames set forth in these procedures are meant to provide guidance and the college may alter or extend time frames, with notice to the parties, as appropriate.

**10. Communications:**
All communications and notices required by these procedures may be made electronically, in hard copy or in person.

## III. INITIATING A COMPLAINT

**1. Individual**
A person who has experienced an incident of sexual misconduct, as defined in the **College Sexual Misconduct Policy**, may file a complaint against the Amherst College student responsible for that conduct. "Person" may include any member of Amherst College, including students, faculty, administrators and staff members, visitors or members of one of the constituent institutions of the Five Colleges.

**2. Administrative**
In exceptional cases, such as cases threatening community safety, the college may initiate a complaint through the Dean of Student Conduct against a student of the college. As set forth in the Sexual Misconduct Policy, reports of sexual misconduct undergo a Title IX Review to determine the appropriate response.

## IV. FILING REQUIREMENTS

The person bringing the allegation is called the Complainant. The Complainant will submit a Complaint Form (paper or electronic format) to the Dean of Student Conduct. The Complaint Form should contain sufficient information to permit the Respondent to understand the charges being brought and to be able to adequately respond. The Complaint Form may not reflect every detail related to the allegations in the complaint as additional information may be discovered during the investigation.

## V. INFORMATION FOR COMPLAINT

After receipt of the Complaint, the Dean of Student Conduct or designee will notify the Complainant of the option to have an Advisor provided by the college and will give the Complainant a list of Advisors from which to select. The Dean of Student Conduct or designee will also provide Complainant information regarding the rights and responsibilities of the Complainant and Respondent, explain the prohibition against retaliation, explain the Hearing Board process, instruct the Complainant not to destroy any potentially relevant documentation in any format, and give the Complainant a copy of the relevant policies.

## VI. INTERIM MEASURES

Upon the filing of a complaint, the Dean of Student Conduct or designee will review the allegations and determine the necessity and scope of any interim measures to prevent further acts of harassment, misconduct or retaliation and to provide a safe educational and work environment. The range of interim measures may include, but not be limited to:

- No-Contact Order
- Academic, Employment or Residence Modifications
- Emotional Support
- Interim Suspension

## VII. WITHDRAWAL OF COMPLAINT

Prior to a hearing before the Hearing Board, the Complainant may withdraw the sexual misconduct complaint. Withdrawal of the complaint will, in most circumstances, end the Student Conduct Process. The college reserves the right to move forward with the Complaint, even after the Complainant withdraws it, in order to protect the interests and safety of the college community.

## VIII. RESPONDING TO COMPLAINT

### 1. Notification of Respondent:

The person against whom the complaint is filed is called the Respondent. The Respondent will be notified that a complaint alleging sexual misconduct has been filed against him or her.

### 2. Information for Respondent:

Within three days of receiving notice of the complaint, the Respondent must meet with the Dean of Student Conduct or designee. The Dean of Student Conduct or designee will provide the Respondent with a copy of the Complaint Form, discuss the nature of the complaint, provide the option to select an Advisor from the list of trained Advisors, explain the rights and responsibilities of the Complainant and Respondent, explain the prohibition against retaliation, explain the Hearing Board process, instruct the Respondent not to destroy any potentially relevant documentation in any format, and give the Respondent a copy of the relevant policies. The Respondent must submit a written response within three business days of receipt of the complaint. If Respondent fails to meet and cooperate with the Dean of Student Conduct or designee or Investigator, the adjudication of the complaint will proceed without input from the Respondent.

### 3. Acceptance of Responsibility:

After reviewing the Complaint Form and meeting with the Dean of Student Conduct or designee, the Respondent may choose to end the Student Conduct Process by accepting responsibility for the conduct alleged in the Complaint Form. If the Respondent accepts responsibility for the conduct alleged in the Complaint form, the process may, but will not necessarily, proceed to the Investigation Phase. The Dean of Student Conduct or designee will initiate the Hearing Board process to determine an appropriate sanction for the Respondent. If the Respondent disputes the allegations of the Complaint, the matter will proceed to an investigation.

At any point in the process, the Respondent may accept responsibility for the conduct alleged in the Complaint. In such cases, the process will immediately move to the Hearing Board for a decision regarding sanctioning. The Dean of Student Conduct may impose sanctions for violations of the Code.

## IX. INVESTIGATION PHASE

### 1. Investigator:

The Dean of Student Conduct or designee will designate an Investigator of its choosing to conduct a thorough, impartial and fair investigation. The Investigator chosen will have specific training and experience investigating allegations of sexual misconduct.

### 2. Investigation Process:

The Investigator will coordinate the gathering of information from the Complainant, Respondent and other individuals or entities with relevant information regarding the complaint using any of the following processes. The Investigator will share with the Complainant and Respondent for comment or rebuttal information and documentation considered material to the findings related to the complaint.

    a. Document/Records Review

        In addition to reviewing any documents submitted by the Complainant and Respondent, the Investigator will try to obtain such other physical or medical

evidence relevant to the investigation as the Investigator determines, in his or her judgment, to be necessary, including but not limited to documents, police records, electronic or other record of communications between the parties or witnesses, records or other relevant information. In obtaining such evidence, the Investigator will comply with applicable laws and Amherst College policies.

b. Site Visits

The Investigator may visit relevant sites or locations and record observations through written or photographic documentation.

c. Complainant and Respondent Interviews

The Investigator will interview the Complainant and the Respondent separately and may interview one or both more than once as necessary. The Complainant and Respondent may be accompanied by their respective Advisors.

d. Witness Interviews

The Investigator will make a good-faith effort to contact and interview any witnesses identified by the parties or in the documentation, including those no longer at the college. The Investigator may also interview any other individual he or she finds to be potentially relevant to the allegations of the complaint. The Investigator will inform each witness or other individual interviewed that they are prohibited from retaliating against the Complainant and Respondent or other witnesses.

e. Experts

The Investigator may contact any expert the Investigator determines is necessary to ascertain the facts related to the complaint. An expert witness may be contacted for an informal consult or for a professional opinion regarding information learned from the investigation.

3. Report:

a. Contents

The Investigator will prepare an Investigative Report summarizing and analyzing the relevant facts determined through the Investigation, referencing any supporting documentation or statements. The Investigative Report may include summaries of interviews with the Complainant, Respondent, third-party witnesses, experts and any other individuals with relevant information; photographs of relevant sites or physical evidence; electronic records and forensic evidence. The Investigator may provide a summary of his/her impressions including context for the evidence, but will not make a determination as to whether a violation occurred, reserving that decision for the Hearing Board.

b. Distribution to Parties

The Dean of Student Conduct will provide the Complainant and the Respondent with a copy of the Investigative Report before the Hearing.

## X. RESOLUTION

### 1. Voluntary Resolution:

A Complainant and a Respondent may choose to resolve a complaint through voluntary resolution. Voluntary resolution may include conflict mediation or a restorative conference with a college community member. However, voluntary resolution may only be used:

a. Prior to a Notice of Hearing being issued;

b. When the Dean of Students or designee determines this is a suitable option for resolving the concern, and both the Complainant and Respondent agree to use the process;

c. When the complaint does not involve sexual violence as defined in the Sexual Misconduct Policy.

Because the outcomes of voluntary resolution conversations are mutually developed and agreed upon by parties involved, an appeal of the process and its result is not permitted. If the parties are unable to agree on a voluntary resolution, the matter will be referred by the Dean of Student Conduct or designee to the Hearing Board. No statements made during the voluntary resolution process may be introduced before the Hearing Board.

**2. Sexual Misconduct Hearing Process:**
   A. Composition of Hearing Board

Hearings to address complaints of sexual misconduct shall be conducted by the Sexual Misconduct Hearing Board except that the Provost may determine an alternate Hearing Board composition if a full Hearing Board cannot reasonably be convened. The Hearing Board for a particular hearing comprises three persons that are drawn from a pool of individuals from the community, including the Five College Consortium. All Hearing Board members will have prior experience in, and will receive annually training regarding, the dynamics of sexual misconduct, the factors relevant to a determination of credibility, the appropriate manner in which to receive and evaluate sensitive information, the manner of deliberation and the application of the preponderance-of-the-evidence standard, as well as the college's policies and procedures. The Dean of Students or designee will serve as the non-voting Chairperson and as an advisor to the Hearing Board. Hearing Board members shall not consist of faculty, staff or students at Amherst College.

   B. Notice of Hearing

The Dean of Student Conduct or designee will issue a Notice of Hearing to the Complainant and the Respondent electronically or in person. The Notice of Hearing will identify the date, time and place of the hearing and state the names of the persons serving on the Hearing Board for the case. The Notice of Hearing will be sent at least seven days prior to the hearing date.

   C. Pre-Hearing Procedures

    1. Meeting with Complainant and Respondent

As soon as possible after issuing the Notice of Hearing, the Dean of Student Conduct or designee may meet individually with Complainant and Respondent and their respective Advisors to discuss the hearing process and answer any questions.

    2. Deadlines

     a. Request to Reschedule Hearing

Either party may request to reschedule the hearing. Requests to reschedule must come directly from the Complainant or Respondent, must be submitted to the Dean of Student Conduct at least two days prior to hearing, whenever possible, and must specify the reasons for the request. The Dean of Student Conduct will decide whether to grant such request.

     b. Request to Remove Board Member

The Complainant and Respondent may submit written requests to the Dean of Student Conduct asking that a member of the Hearing Board be removed if there are reasonable articulable grounds to suspect bias, conflict of interest or an inability to be fair and impartial. The written request must identify the grounds for the removal and be received by the Dean of Student Conduct within three days following delivery of the Notice of Hearing. The Dean of Students will decide whether to grant such request. Removal of a Hearing Board member may require that the hearing be rescheduled.

     c. Witness Lists

If the Complainant or Respondent wishes to call witnesses at the hearing, each must submit a list of witnesses to the Dean of Student Conduct or

designee serving as Chair of the Hearing Board. Generally, neither party will be permitted to call character witnesses nor any person who was not interviewed by the Investigator. The witness list must be submitted no later than three days prior to the hearing date. For any witness not interviewed by the Investigator, the following information is required at the time the witness list is submitted:

- Names of witnesses the party intends to call
- A written statement and/or description of what each witness observed
- A summary of why the witness' presence is relevant to making a decision on the complaint
- The reason why the witness was not interviewed by the Investigator.

The Dean of Students or designee will determine if there is sufficient justification for permitting a witness who was not interviewed by the Investigator. The Dean of Students or designee may also require that the Investigator interview the newly suggested witness. The approved witness list will be shared with the parties and the Hearing Board prior to the hearing.

The Hearing Board may call any witness it deems to have relevant information.

3. Documentation and Evidence

a. Not Provided to Investigator

The Complainant or Respondent may wish to present additional documentation or other evidence at the hearing that was not provided to the Investigator. Within three days prior to the hearing date they must submit to the Dean of Students or designee serving as Chair of the Hearing Board the list of documents or other evidence. The list of documents must contain the following information:

- Identification and description of the document or other evidence the party intends to present.
- A summary of why the document or other evidence is relevant to making a decision on the complaint.
- The reason why the document or other evidence was not provided to the Investigator.

The Dean of Students or designee will determine if the additional documentation or other evidence is relevant and if there is sufficient justification for permitting its use at the hearing where it was not provided to the Investigator. The Dean of Students or designee may also require that the Investigator review the additional documentation or other evidence. If the additional documentation or evidence is approved, it will be shared with the parties and the Hearing Board prior to the hearing.

b. Prior Sexual History, Bad Acts or Pattern Evidence

In general, in a case where the Respondent raises consent as a defense, any prior consensual relationship between the parties may be deemed relevant but not necessarily determinative. As noted in the Sexual Misconduct Policy, a current or previous dating or sexual relationship, by itself, is not sufficient to constitute consent. Generally, prior sexual history of the Complainant or Respondent will not be allowed. However, in limited circumstances, such as pattern evidence, it may be relevant in the determination of responsibility or, in the case of Respondent, assigning of a sanction. Additionally, a prior finding (post appeal rights) of responsibility for a similar act of sexual misconduct will always be deemed relevant and may be considered in making a determination as to responsibility and/or assigning of a sanction.

If either party wishes to bring forth information concerning the other party's sexual history, bad acts or pattern evidence, such requests must be

made to the Dean of Students. The Dean of Students or designee serving as Chair of the Hearing Board will judge the admissibility of such information. To aid in an advance determination of relevance, the following must be submitted no later than three days before the hearing to the Dean of Student Conduct:

- A written statement and/or description of the proposed information, if not already provided during investigation; and
- A summary of why this information is relevant to making a decision of responsibility at the hearing.

The Dean of Students or designee will determine if the information concerning prior sexual history, bad acts or pattern evidence is appropriate for inclusion at the hearing.

4. Impact Statement

The Complainant and the Respondent each have the right to prepare an Impact Statement to be considered by the Hearing Board while determining sanctions. Impact Statements are optional and are permitted in addition to any information provided during the hearing. Each party can prepare a written statement and provide it in a sealed envelope to the Chair on the day of the hearing. The statements will be opened only if the Respondent is found responsible. Otherwise, they will be destroyed by the Chair.

D. Hearing Requirements

1. Participants

Those who may be present at the hearing are the Complainant, the Respondent, their respective Advisors, the Investigator, witnesses and other college officials. The Investigator and witnesses may be present in the hearing room when they are providing information to the Hearing Board. The Complainant and Respondent will be present in the hearing room, unless as prescribed under Alternative Attendance.

2. Attendance

a. Failure to attend

If a party fails to attend a hearing for any reason other than an emergency, the hearing may be held in his or her absence. A student called as a witness who fails to testify may be found responsible for violating the Honor Code.

b. Alternative Attendance

A Complainant or Respondent may also request participation in the hearing by other suitable means that would not require physical proximity to the other. This can include, but is not limited to, partitioning a hearing room or using technology to facilitate participation. The Hearing Board may also allow for witnesses to appear through other technological means. All requests to participate in the hearing other than in person must be reviewed in advance by the Dean of Students or designee as Chair to ensure compliance with a fair and equitable process.

3. Standard of Proof

The Hearing Board will determine the Respondent's responsibility by a preponderance-of-the-evidence standard which is whether the information provided at the hearing supports a finding that it is "more likely than not" that the Respondent is responsible for the alleged violation(s).

4. Recording Proceedings

Hearings before the Hearing Board are audio-recorded for the purpose of (1) reference by the Hearing Board or Chair during deliberations, (2) review by the Provost or appeals panel during an appeal, (3) to serve as the official record of the hearing and (4) to be available to the Complainant or Respondent

should either wish to file an appeal. The Hearing Board's deliberations are not audio-recorded.

E. Conducting the Hearing

1. Call to Order

The Dean of Students or designee serving as the Chair of the Hearing Board will call the hearing to order. The Chair will explain the hearing process and provide an opportunity for all parties to ask procedural questions prior to initial statements and the presentation of information. The Chair will ask each individual present to state their name and identify their role during the hearing.

2. Confidentiality

The Chair will inform parties that the proceedings are confidential as required under the Family Educational Rights and Privacy Act (FERPA) and that information received at the hearing should not be shared outside the hearing room except as allowed by FERPA or other applicable law.

3. Investigator Presentation

The Investigator will present to the Hearing Board all pertinent information regarding the incident in question, including but not limited to the Investigative Report, written statements, documents, photographs, oral statements from the parties and witnesses and any other items or information. The Hearing Board may first ask questions of the Investigator, followed by the Complainant and then the Respondent.

4. Complainant's Presentation

The Complainant may present his or her own account of the events. The Hearing Board may ask Complainant questions, followed by the Respondent. The Respondent's questions must be directed through the Chair. The Chair will ask the Complainant those questions that are deemed relevant. A similar process will be followed for each witness offered by the Complainant. Once a witness is done presenting information and answering questions, he or she will be asked to leave the hearing room.

5. Respondent's Presentation

The Respondent may present his or her own account of the events. The Hearing Board may ask the Respondent questions, followed by the Complainant asking the Respondent questions. The Complainant's questions must be directed through the Chair. The Chair will ask the Respondent those questions that are deemed relevant. A similar process will be followed for each witness offered by the Respondent. Once a witness other than a party is done presenting information and answering questions, he or she will be asked to leave the hearing room.

6. Recall of Witnesses

The Hearing Board reserves the right to recall any party or witness during the hearing process for further questions and to seek additional information necessary to make a decision.

7. Summary Statements

Upon conclusion of the presentation of information by the Investigator, parties and witnesses, the Complainant and the Respondent may make brief summary statements to the Hearing Board. The Complainant will present his or her summary statement first, followed by the Respondent.

8. Deliberation

At the conclusion of the hearing, everyone other than the Chair, the college's legal counsel and the Hearing Board members will be dismissed from the hearing room to allow the Hearing Board to deliberate in private. The Chair and the college's legal counsel may remain for deliberations but may not participate in the deliberations and may not vote. The Hearing Board must reach a decision

on responsibility by majority vote. The Dean of Student Conduct, or designee, will provide the Board with violation precedence and a student conduct history (if applicable). If the Hearing Board finds responsibility, it will deliberate regarding the appropriate sanction(s) and reach a decision by majority vote. The votes themselves will not be shared with the parties, only the decision on responsibility and any applicable sanction. The Hearing Board may schedule additional meetings to complete deliberations if necessary.

9. Sanctions

If the Hearing Board finds the Respondent responsible for violations of the **Sexual Misconduct Policy** and/or other college policies, the Hearing Board will impose appropriate sanctions by selecting from the range of sanctions outlined in the **Student Conduct Process**. Sanctions may be issued individually or in combination with other sanctions. In determining the appropriate sanction(s), the Hearing Board may consider a number of factors, including the harm suffered by the Complainant; any ongoing risk to either the Complainant or the community posed by the Respondent; the impact of the violation(s) on the community, its members or its property; any previous conduct violations; any mitigating or aggravating circumstances; and the information contained in any impact statements submitted by the parties.

10. Notice of Outcome

Generally, the Hearing Board will communicate the result of the hearing and any sanction(s) to the Respondent and the Complainant within three days from the date the Hearing Board's deliberations concluded and such communication will be in writing.

F. Appeal Process

1. Eligibility and Timeline

Either party may request an appeal within seven days from the time of notification of the decision by the Dean of Students Office.

2. Grounds

The appeal may be based only on one or more of the following grounds:
- Material procedural error;
- Bias by the Chair or a member of the Hearing Board;
- Relevant, substantive and new information, not available at the time of the hearing.

3. Filing

Appeals must be in writing and submitted to the Provost. The appeal shall consist of a written statement explaining the grounds for the appeal.

4. Granting Review of Appeal

The Provost or designee shall determine whether grounds for appeal have been met within seven business days after the timely receipt of appeal. If the Provost determines the grounds have not been met, the party who submitted the appeal will be notified. If the grounds for appeal have been met, each party will be notified. The party not submitting the appeal will be given three days to submit a written response to the Provost. The appeal will be reviewed by a three-person panel (Appeals Panel), consisting of the Provost and two members from the Sexual Misconduct Hearing Board pool who were not involved in the initial hearing. A meeting of the Appeals Panel will be scheduled within 14 days of the Provost's determination to grant review of the appeal. In most cases, it should be possible to convene an Appeals Panel. However, if a full Appeals Panel cannot, in the judgment of the Provost, reasonably be convened, those cases may be reviewed by the Provost or designee sitting without an Appeals Panel. In the absence of the Provost, the President will designate another individual to serve the role of the Provost in this appeal process.

5. Standard of Review

The appeal is based on the record and is limited to the three possible bases for appeal. The appeal is not a *de novo* review.

6. Appeals Panel Decision

The Appeals Panel shall consider the merits of an appeal only on the basis of the three grounds for appeal and supporting information provided in the written request for appeal, any response to the request for appeal, and the record of the original hearing. Any decision of the Appeals Panel shall be made by majority vote. The vote itself shall not be shared with the parties. The parties will be advised only of the decision on responsibility. The Appeals Panel can affirm the original findings, alter the findings and/or alter the sanctions. If the appeal is based on procedures not having been followed in a material manner, and the Appeals Panel deems that information to be clear and convincing, the Appeals Panel can direct that a new hearing occur before a panel composed of a new board of hearing officers. In the case of new and relevant information, the Appeals Panel can direct that the case be returned to the original Hearing Board to assess the weight and effect of the new information and render a determination after considering the new facts. The Appeals Panel will communicate the result of the appeal to the Complainant and Respondent within five days from the date the Appeal Panel concluded its deliberations and will do so in writing. Appeal decisions are final.

G. Records Maintained

The hearing audio-recording, together with the documents, information and other evidence presented at the hearing, will serve as the record of the hearing proceedings and will be maintained by the Dean of Student Conduct as part of the Respondent's conduct record.

If a student has been found responsible by the Hearing Board for violating the Sexual Misconduct Policy, such records shall be used in reviewing any further conduct issues, or developing sanctions, and shall remain a part of a student's conduct record.

Generally suspension, expulsion and withdrawal pending disciplinary action are permanently noted on a student's transcript. The conduct files of students who have been suspended or expelled from the college are maintained in the Dean of Students Office for no fewer than five years after their departure from the college.

## Appendix D: Consensual Sexual Relationships Between Faculty Members and Students

Experience has shown that consensual sexual relationships between faculty members and students can lead to harassment. Faculty members should understand the potential for coercion in sexual relationships with students with whom the faculty members also have instructional, advisory or supervisory relationships.

Even when such relationships do not lead to harassment, they can compromise the integrity of the educational process. The objectivity of evaluations which occur in making recommendations or assigning grades, honors and fellowships may be called into question when a faculty member involved in those functions has or has had a sexual relationship with a student.

For those reasons, the college does not condone, and in fact strongly discourages, consensual sexual relationships between faculty members and students. The college requires a faculty member to remove himself or herself from any supervisory, evaluative, advisory or other pedagogical role involving a student with whom he or she has had or currently has a sexual relationship. Since the absence of this person may deprive