UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE,<br><br>     Plaintiff,<br><br>     v.<br><br>AMHERST COLLEGE, CAROLYN MARTIN, JAMES LARIMORE, TORIN MOORE,  SUSIE MITTON SHANNON, AND LAURIE FRANKL,<br><br>     Defendants. | C.A. No. 3:15-cv-30097-MAP |

### DEFENDANTS' ANSWER

Defendants Amherst College (the "College"), Carolyn Martin ("President Martin"), James Larimore ("Dean Larimore"), Torin Moore ("Dean Moore"), Susie Mitton Shannon ("Dean Mitton Shannon"), and Laurie Frankl ("Ms. Frankl") (collectively, "Defendants") answer the Complaint filed by plaintiff John Doe ("Plaintiff") as follows:

1.      Defendants deny this case involves any "miscarriage of justice."  To the contrary, Defendants admit, and the evidence will show, the following:

- In the fall of 2013, Plaintiff, then a senior at Amherst, faced a sexual misconduct complaint arising out of sexual encounter during his sophomore year with another student, Sandra Jones ("Ms. Jones"), who alleged that Plaintiff forced her to perform oral sex on him after she had withdrawn her consent to sexual activity by forcing his penis into her mouth, holding her head, and causing her to choke, stopping once he had ejaculated (the "Incident").

- Presented with Ms. Jones's complaint, Amherst engaged an experienced, independent attorney to investigate the allegations, promptly and impartially.

- Amherst conducted a disciplinary hearing at which Plaintiff and Ms. Jones were afforded an equal opportunity to present their cases through the testimony of witnesses and the submission of documentary evidence, in full compliance with the College's policies and the law.

- A three-member hearing board composed of persons from outside of the Amherst community heard testimony and received evidence from both Plaintiff and Ms. Jones and also the witnesses that they presented.

- After deliberating and carefully considering the evidence presented at the disciplinary hearing, the hearing board found Plaintiff responsible for sexual assault by a preponderance of that evidence and assigned the sanction of expulsion.

- The College, in full compliance with its policies, informed Plaintiff that he had the right to appeal the board's decision.

- Plaintiff exercised his right of appeal, supported by a written statement which, according to the Plaintiff, was prepared with the assistance of legal counsel and which made no mention of any intention or desire to seek to present any new documentary evidence to the hearing board.

- Plaintiff's appeal was then reviewed by the College's provost and was denied.

For these reasons and others, the College's disciplinary process was conducted with fundamental fairness, in good faith, and in full compliance with the College's policies and the law, and the College's decision that it would not "reopen" a disciplinary proceeding based on documentation that was presented for the first time several months after the appeals period had expired was not arbitrary, capricious, or discriminatory.  Except to admit that Plaintiff identified as Asian-

American and received substantial financial aid from the College, Defendants deny the remaining allegations in paragraph 1.

2.      Defendants deny that Plaintiff's expulsion resulted from a "deeply flawed investigatory and disciplinary process," or that Plaintiff was "denied the most rudimentary fairness promised him by Amherst in its *Student Handbook*," allegations that are wholly untrue. Indeed, when Plaintiff's Complaint is stripped of many paragraphs of rhetoric and argument, his own allegations and the College's *Student Handbook* confirm that the College:

- Notified Plaintiff of the charges against him;

- Reviewed the charges with him;

- Offered and provided the assistance of a trained advisor of his choosing;

- Advised him of his right to consult with a private attorney;

- Afforded him equal opportunity to submit evidence for consideration by an independent investigator and hearing board;

- Granted him equal opportunity to call witnesses to testify at the disciplinary hearing, to present evidence, and to respond to the evidence;

- Promptly notified him of the hearing board's decision and the sanction assigned by the board;

- Apprised him of his appellate rights under the College's policies; and

- Considered his written appeal, which, according to Plaintiff, he prepared with the assistance of counsel.

All of this fully comported with the College's policies and the law.  Further answering, Defendants admit that Ms. Jones submitted her sexual misconduct complaint against Plaintiff on

October 28, 2013 and that Plaintiff was ultimately expelled on December 13, 2013.  All other allegations in paragraph 2 are denied.

3.      Defendants admit that several months after Plaintiff was notified of the hearing board's decision, he sought to submit additional documentation to the College, even though the College's policy expressly provided that appeals based on "relevant, substantive and new information, not available at the time of the hearing" may be made "within seven days from the time of notification of the decision by the Dean of Students Office."  Defendants are without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegation as to when he purportedly "discovered" the additional documentation or whether any documentation had been "concealed," and therefore leave Plaintiff to his proof.  Defendants deny that the documentation "disclosed" an admission by Ms. Jones that she had "consented to the sex" with Plaintiff or that she was the "moving force" during the Incident, much less that it did so in an "irrefutable" manner.  Further answering, Defendants state that much of the new documentation offered by Plaintiff appeared intended to assail Ms. Jones for her prior and past sexual activities with persons other than Plaintiff, none of which would have been relevant to a determination concerning the allegations raised by Ms. Jones in her sexual misconduct complaint, namely that Plaintiff forced his penis into her mouth and held her head in place until he ejaculated, all after she had withdrawn consent to sexual activity with him.  Defendants deny all remaining allegations in paragraph 3.

4.      This paragraph purports to state legal conclusions, to which no response is necessary.  To the extent a further response is deemed necessary, Defendants deny that Plaintiff has properly stated any viable claim arising under the listed federal statutes.

5.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation as to Plaintiff's residence.  Defendants admit that the College is a private, non-profit college located in Amherst, Massachusetts.  Defendants admit that President Martin, Dean Moore, and Ms. Frankl reside in Massachusetts.  Defendants deny all remaining allegations in paragraph 5.

6.     This paragraph purports to state a legal conclusion, to which no response is necessary.  To the extent a further response is deemed necessary, Defendants deny that Plaintiff has properly stated any viable claim providing the basis for federal question jurisdiction or that there is a basis for diversity jurisdiction.

7.     This paragraph purports to state a legal conclusion, to which no response is necessary.  To the extent a further response is deemed necessary, and if federal question or diversity jurisdiction exists, then Defendants admit that venue would be proper in this judicial district.

8.     Defendants admit that Plaintiff was formerly a full-time student at Amherst, matriculated at Amherst in the fall of 2010, and was expelled by the College in December 2013 following an investigation and disciplinary hearing at which he was found responsible for sexual assault.  Defendants deny that Plaintiff's expulsion was improper.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8, and therefore leave Plaintiff to his proof.

9.     Admitted.

10.     Defendants admit that Carolyn "Biddy" Martin is the President of Amherst, but state that she began her tenure at the College in August 2011, not June 2011.

11.     Admitted.

12.     Defendants admit that Dean Moore was the Assistant Dean of Students and Director of Residential Life, and that he served as Plaintiff's trained and chosen advisor during his disciplinary hearing.  Defendants deny any remaining allegations in paragraph 12.

13.     Admitted, except to state that Dean Mitton Shannon's first name is Susie, not Susan.

14.     Defendants admit that Ms. Frankl has served as the Title IX Coordinator at the College since December 3, 2013, but otherwise deny the allegations in paragraph 14.

15.     Defendants deny any contention that the College's decision to expel Plaintiff was motivated by anything other than an independent hearing board's careful consideration of the evidence presented at Plaintiff's disciplinary hearing, or that the College's denial of Plaintiff's belated request to "reopen" the disciplinary proceedings was premised on anything other than compliance with its published policies and procedures, of which Plaintiff was fully advised.  The remaining assertions in this paragraph are not factual allegations in support of any claim, but rather inappropriate and speculative argument and rhetoric, to which no response is required.  To the extent a response is deemed necessary, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 15, and therefore leave Plaintiff to his proof.

16.     Defendants admit that, on April 4, 2011 (not April 2, 2011), the Department of Education's Office for Civil Rights ("OCR") issued a "Dear Colleague Letter" to colleges and universities across the nation, which the Department of Education ("DOE") described as "a significant guidance document."   Defendants further admit that the Dear Colleague Letter stated, among other things: (a) "Sexual harassment of students, which includes acts of sexual violence, is a form of sex discrimination prohibited by Title IX"; and (b) "If a school knows or reasonably

6

should know about student-on-student harassment that creates a hostile environment, Title IX requires the school to take immediate action to eliminate the harassment, prevent its recurrence, and address its effects." Defendants deny that the Dear Colleague Letter "listed specific disciplinary procedures said to be required by Title IX."

17.     Defendants admit that a number of institutions of higher education are currently under investigation by OCR for possible violations of federal law regarding their handling of complaints about sexual violence and harassment; that students at Amherst (like students at many colleges) have voiced their concerns about the College's response to allegations of sexual misconduct; that soon after President Martin's arrival in August 2011, the College began reviewing its policies and procedures to ensure that they complied with Title IX; that, in the spring of 2012, a Title IX Committee made recommendations for changes in the student conduct process; and that those recommended changes, along with additional improvements made under the guidance of legal counsel, appeared in the *Student Handbook* provided to students at the beginning of the 2012-2013 academic year. Defendants deny all remaining allegations in paragraph 17.

18.     Defendants admit that, on October 17, 2012, *The Amherst Student*, an independent student newspaper, published an essay authored by Angie Epifano, a former student of the class of 2014, entitled "Account of Sexual Assault at Amherst College." Defendants deny Plaintiff's allegations about this essay, which Plaintiff mischaracterizes and selectively quotes out of context, and further answering state that Ms. Epifano's essay speaks for itself in its entirety. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 18 and therefore leave Plaintiff to his proof.

19.     Defendants admit that, on October 18, 2012, President Martin issued a *Statement on Sexual Assault* to Members of the Amherst Community, in which she stated, among other things:

> I write in response to the recent news about an incident of sexual violence and misconduct on the Amherst campus and to reports that the College has failed to treat similar incidents with adequate transparency or seriousness.  A student's first-person account in this week's *Amherst Student* is horrifying – her rape, her painful efforts to deal with it on her own, and her subsequent experiences when she sought help on the campus.
>
> In response to her story, still more accounts of unreported sexual violence have appeared in social media postings and in emails I have received from several students and alumni. Clearly, the administration's responses to reports have left survivors feeling that they were badly served. That must change, and change immediately.  I am investigating the handling of the incident that was recounted in *The Student*.  There will be consequences for any problems we identify, either with procedures or personnel.

Defendants deny the allegations in the last sentence of paragraph 19.

20.     Defendants admit that Ms. Epifano's essay received coverage in national and local media, including *The New York Times* (which ran a story on October 26, 2012), *The Huffington Post*, *The Boston Globe*, *USA Today*, *Bloomberg*, and *NPR*.  Defendants deny Plaintiff's characterization of the media coverage.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20 and therefore leave Plaintiff to his proof.

21.     Defendants admit that, after the publication of Ms. Epifano's essay, current and former students raised concerns about the College's handling of reports of alleged sexual misconduct.  Defendants deny Plaintiff's characterization of the content of those concerns or the manner in which those concerns were raised.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 21 and therefore leave Plaintiff to his proof.

22.     Defendants admit that the College formed a Special Oversight Committee on

Sexual Misconduct and that the Committee's charge was as follows:

> The Special Oversight Committee on Sexual Misconduct is charged with making
> recommendations to President Martin for improvement in the College's efforts to
> prevent and address sexual assault on campus, and to advise the President as she
> seeks immediate changes.  Those recommendations will be shared with the Board
> of Trustees at the January 2013 Board meeting.  The committee will consider the
> following five key areas:
>
> - **Campus environment**: taking stock of Amherst's campus culture, and
>   identifying ways that it impedes or facilitates sexual respect among
>   students.
> - **Resources**: examining the structure and mission of Amherst Student
>   Affairs, and making recommendations for how to restructure and
>   redistribute its resources.  This includes the Dean of Students office, the
>   Health Center, and the Counseling Center.
> - **Education**: recommending improvements to Amherst's sexual education
>   programs, to better promote gender equity and healthy sexual behavior on
>   campus.
> - **Recent history**: distilling lessons learned from recent instances of sexual
>   misconduct at Amherst, as well as from the experiences of other
>   institutions.
> - **Policy and Title IX**: providing a summary of recommendations for policy
>   changes throughout the school, including those associated with Title IX.

Defendants deny Plaintiff's characterization of the Committee's Charge.  Defendants admit that

the Committee was composed of three faculty members, two staff members (including the

College's Title IX Coordinator), two trustees (including a partner at a major law firm), and two

students, one male and one female.  Defendants admit that one of the Committee's student

representatives, LR, served as a peer advocate for sexual respect at the College and was a witness

at Plaintiff's disciplinary hearing.  Defendants deny any remaining allegations in paragraph 22.

23.     Defendants admit that the College cancelled classes and closed its offices on

November 2, 2012 for an event called "*Day of Dialogue – Speaking to Silence: Conversations on

Community and Individual Responsibility*," during which nearly 70% of the College's students,

faculty, and staff participated and explored topics of concern to the campus, including sexual

violence, issues of privilege, individual responsibility, and community growth.  Defendants deny any remaining allegations in paragraph 23.

24.     Defendants admit that the Special Oversight Committee on Sexual Misconduct issued its report in January 2013 (the "Report"), which included recommendations for building and fostering a community "that places the highest value on the practice of good citizenship and respect for persons."  Defendants deny Plaintiff's allegations about this Report, which Plaintiff mischaracterizes and selectively quotes out of context, and further answering state that the Report speaks for itself in its entirety.  Defendants admit that President Martin flew to Alabama to meet Ms. Epifano in January 2013, but otherwise deny the allegations in the final sentence of paragraph 24.

25.     Defendants admit that, after the Report was issued, the College published a Student Handbook for the 2013-2014 academic year (the "*Student Handbook*"), that the *Student Handbook* contained two appendices, one entitled "College Sexual Misconduct Policy" ("Policy") and one entitled "Procedures for Addressing Sexual Misconduct Complaints Against Students Under the Student Conduct Process" ("Procedures"), that the appendices included procedures concerning the investigation and hearing phases relating to claims of sexual misconduct, that the appendices are attached as Exhibit 1 to the Complaint, and that the appendices were in effect during the investigation and hearing relating to Ms. Jones's complaint of sexual misconduct against Plaintiff.  Defendants deny any remaining allegations in paragraph 25.

26.     Except to admit that Ms. Epifano filed a complaint with the DOE, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences in paragraph 26 and therefore leave Plaintiff to his proof.  Defendants

admit that media outlets reported that complaints had been filed with the DOE.  Defendants deny any remaining allegations in paragraph 26.

27.    Defendants admit that Ms. Jones submitted a sexual misconduct complaint against Plaintiff on October 28, 2013 arising out of a sexual encounter that she reported had occurred on February 4, 2012 and during which she alleged that Plaintiff sexually assaulted her and forced her to perform oral sex on him after she had withdrawn her consent to sexual activity by forcing his penis into her mouth, holding her head, and causing her to choke, stopping once he had ejaculated (the "Assault Complaint").  Further answering, Defendants state that although Plaintiff has previously claimed that he "[did] not have any recollection" and "remembered nothing" about his interaction with Ms. Jones, he now alleges (and thus admits) that a "sexual encounter" with Ms. Jones did occur during which "[s]he performed oral sex on [him]," and he further alleges that the encounter – about which he previously professed having no memory – was "consensual."   Except to state that evidence presented at the disciplinary hearing contradicted Plaintiff's claim that he was "incapacitated" (*see* Answer, ¶¶ 55, 83), Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 27 and therefore leave Plaintiff to his proof.

28.    Defendants deny that Ms. Jones "took no action for one year and nine months after the event" – to the contrary, Ms. Jones reported a complaint to Dean Mitton Shannon in the spring of 2013, but at that time stated that she did not wish to pursue the disciplinary process because the semester was coming to an end.  Defendants admit that Ms. Jones submitted the Assault Complaint against Plaintiff on October 28, 2013 arising out of the Incident that she reported occurred on February 4, 2012 and during which she alleged that Plaintiff sexually assaulted her.  Defendants admit that LR was a member of the Special Oversight Committee on

Sexual Misconduct and served as a peer advocate for sexual respect at the College.  Defendants

deny Plaintiff's assertion that the Investigator "found" that any testimony of LR "lack[ed]

credibility," and further answering state that the investigator only offered her "impression[]" that

certain portions of LR's testimony "raised questions."  Defendants deny that Ms. Jones's Assault

Complaint was the first complaint to be investigated and heard under the policies set forth in the

*Student Handbook*.  Defendants are without knowledge or information sufficient to form a belief

as to the truth of the remaining allegations in paragraph 28 and therefore leave Plaintiff to his

proof.

29.    Defendants admit that, on November 1, 2013, Dean Mitton Shannon notified

Plaintiff of Ms. Jones's Assault Complaint and described her allegations to him.  Defendants

admit that Dean Mitton Shannon advised Plaintiff that he and Ms. Jones had the equal right to be

assisted by an Advisor as provided in the *Student Handbook*, which stated as follows:

> Complainant and Respondent both have the right to be assisted by an advisor
> provided by the College during the Student Conduct Process.  The Complainant
> will be offered an Advisor at the time the complaint is filed, and the Respondent
> will be offered an Advisor at the time he or she is notified or the complaint.  The
> Complainant and Respondent may select from the list maintained by the Dean of
> Students of trained Advisors or decline the assistance of any Advisor.  An
> Advisor serves to guide the student through the pre-hearing and hearing process
> and may accompany the student to any meeting with a college employee and to
> the hearing.  The Advisor is not an advocate for the student and may not direct
> questions to or otherwise address the Sexual Misconduct Hearing Board (Hearing
> Board) but may consult student that he or she is assisting.

Defendants admit that Dean Mitton Shannon advised Plaintiff that he and Ms. Jones had the

equal right to consult with a private attorney as provided in the *Student Handbook*, which stated

as follows:

> The Complainant and Respondent have the right to consult private attorneys, at
> their own expense, regarding a complaint.  Attorneys cannot participate in the
> hearing board process.  Attorneys may be present on campus during a hearing;
> however, they are required to remain outside of any hearing room.  An attorney

may be present to provide legal counsel to the Chair and to the Hearing Board members.

Defendants admit that Dean Mitton Shannon apprised Plaintiff that the College would conduct an investigation and hearing regarding the Assault Complaint in a manner that respected confidentiality and individual privacy, in accordancewith the *Student Handbook*.  Defendants deny that Dean Mitton Shannon told Plaintiff that he "must not speak to anyone about the allegations against him unless he obtained prior authorization from the College's investigator." With respect to potential witnesses, Defendants admit that Plaintiff and Ms. Jones were advised, in accordance with the *Student Handbook*, that "[t]he investigator will make a good faith effort to contact and interview any witnesses identified by the parties" and that the investigator "may also interview any other individual he or she finds to be potentially relevant to the allegations of the complaint."   Defendants deny all remaining allegations in paragraph 29.

29.	Defendants admit that the College engaged Attorney Allyson Kurker ("Attorney Kurker" or "the Investigator"), an investigator with specific training and experience investigating allegations of sexual misconduct, to investigate Ms. Jones's Assault Complaint in accordance with the College's Policy and Procedures and to prepare a report summarizing and analyzing the relevant facts and, at her discretion, providing her impressions.  Defendants further admit that a true and correct copy of Attorney Kurker's report (with redactions) is attached to the Complaint as Exhibit 2 ("Investigative Report").  Defendants deny Plaintiff's characterization of the Investigator's "charge" under the College's Policy and Procedures, which actually describes the investigator's role in relevant part as follows:

- The investigator will coordinate the gathering of information from the Complainant, the Respondent and any other individuals who may have information relevant to the determination.  The investigator will also gather any available physical or medical evidence, including documents,

communications between the parties and other electronic records as
appropriate.  (Policy, VIII (4))

- The investigator will make a good faith effort to contact and interview any
witnesses identified by the parties or in the documentation, including those
no longer at the College. (Procedures, IX (2)(d))

Defendants deny any remaining allegations in paragraph 30.

31.     Defendants admit that Ms. Jones identified two witnesses whom she believed had

relevant information (namely JM and LR) and that Plaintiff identified four witnesses whom he

believed had relevant information (EH, EK, NK, and RM).  Defendants deny that Ms. Jones or

Plaintiff described these six persons as "witnesses to the events."  Defendants admit that, on

November 11, 2013, Attorney Kurker interviewed Ms. Jones (accompanied by her advisor),

Plaintiff (accompanied by his advisor), EH, EK, NK, LR, and JM, and that she interviewed RM

on November 15, 2013.  Defendants deny any remaining allegations in paragraph 31.

32.     Defendants deny that Ms. Jones "fundamentally changed her story" at the time of

her interview with Attorney Kurker, and they deny Plaintiff's characterizations of the Assault

Complaint, the supplemental account that Ms. Jones provided to Attorney Kurker, and Ms.

Jones's testimony to Attorney Kurker.  Further answering, Defendants state:

- When Ms. Jones described the Incident in an article she wrote in October 2012, she

  reported, "*It began consensually, but evolved into something that was decidedly not*."

  (Complaint, Ex. 2, Ex. E thereto).

- When Ms. Jones described the Incident in her Assault Complaint in October 2013 and her

  supplemental written account in November 2013, she stated that she *"started to hookup"*

  *with Plaintiff in her room, but became "uncomfortable" when Plaintiff began making*

  *"weird" comments about "hav[ing] both [Plaintiff and her roommate] in the same*

  *room*," and that after Plaintiff "tried to get [her] to give him a blow job *again*," she told

him, "No, I don't want to. You should leave.  I don't want to do this anymore."  She

continued to describe the Incident, stating, "[Plaintiff] ignored what I said and pushed his

penis into my mouth anyway.  He kept my head pushed down so I couldn't move, even

though I was choking with how hard he was holding me down." (Complaint, Ex. 2, Exs.

B and C thereto).

- When Ms. Jones described the Incident during her interview with Attorney Kurker on

  November 11, 2013, she stated that "*it start[ed] off that [she] was okay giving [Plaintiff]*

  *a blow job*" but that she "*felt uncomfortable*" after Plaintiff began "*grabbing [her]*

  *head*" and "*bragging*" that he had "*hooked up*" with both Plaintiff and her roommate,

  and that she then said, "No,… I don't want to keep going," at which point the encounter

  became "not consensual."   She reported that Plaintiff then "took [her] head" and

  "pushed" it near his penis, "holding [it] down" until he ejaculated.

Defendants state that these reports by Ms. Jones reflect that she stated, time and again, that the

Incident began consensually but became non-consensual after Ms. Jones said that she wanted to

stop and Plaintiff ignored her, which implicated a violation of the College's consent policy,

which states in part as follows:

> **Consent may be withdrawn by either party at any time**.  Withdrawal of
> consent must also be outwardly demonstrated by words or actions that clearly
> indicate a desire to end sexual activity.  Once withdrawal of consent has been
> expressed, sexual activity must cease.  (Complaint, Ex. 1, p. 31).

33.   Defendants deny Plaintiff's characterization of what Ms. Jones told Attorney

Kurker during her interview.  Further answering, Attorney Kurker's tape-recorded interview of

Ms. Jones reflects that Ms. Jones was not asked whether she had "otherwise reduce[d] what

happened with [Plaintiff] to writing."  Rather, the recording reflects that after Ms. Jones reported

to Attorney Kurker that she had later told a friend that the Incident with Plaintiff had been "non-consensual," the following exchange occurred:

> Attorney Kurker:     Did anyone other than [your friend] know that it [the
>
> Incident] *was non-consensual at the time*?
>
> Ms. Jones:          No.

Immediately following this exchange, Attorney Kurker then asked Ms. Jones whether she had texted, emailed, written notes, or kept a journal "about this," to which she responded, "No." In the context of the questioning, Ms. Jones reasonably could have understood Attorney Kurker to have asked her whether she had communicated or recorded in writing that the Incident had been "non-consensual," which she did not.

34.      Defendants admit that Attorney Kurker interviewed Plaintiff on November 11, 2013. Defendants deny that Plaintiff told Attorney Kurker during his interview that he "had experienced a blackout"; in fact, the word "blackout" was never mentioned in his interview with Attorney Kurker. Defendants admit that while Plaintiff professed that he "[didn't] remember" what happened *during* the Incident with Ms. Jones, he also told Attorney Kurker that he was able to "remember" multiple events and interactions both *before* and *after* the Incident, including:

- Being in a dorm, drinking with some friends

- That he "got more drunk than [he] wanted to"

- That he left the dorm because he "wanted to see other people"

- That he was "pretty drunk" when he left the dorm and decided that he "wasn't [going to] drink anymore"

- That he walked down the hill "on a pathway for pedestrians"

- That he walked by the "town police station"

16

- That he entered a dormitory and wandered around the halls

- That he headed to "the Socials," a group of dorms for upperclassmen "where the parties and stuff happen"

- That he encountered someone he knew who said that he looked "pretty drunk,"

- That he encountered his roommate, and they walked back to their dormitory

- That he and his roommate talked in their room

Further answering, Defendants state that the allegation that Plaintiff experienced a "blackout" was undermined by Plaintiff's testimony at the hearing (*See* Answer, ¶¶ 55, 83) and the testimony of Plaintiff's roommate NK, who testified that Plaintiff was "function[ing] normally" and "seemed fine" on the night of the Incident and did *not* appear to have "blacked out" (*see* Answer, ¶ 83).  Defendants deny that Plaintiff "insisted" to Attorney Kurker – in either his written statement to her or during his interview with her – that he "was not capable of forcing a woman to have sex."  Further answering, Defendants state that after Plaintiff was informed of Ms. Jones's allegations that he had forced his penis into her mouth after she had withdrawn her consent to performing oral sex, he merely stated, "I just don't really see myself ever doing that." Further answering, Defendants state that Plaintiff told Attorney Kurker that he had an "awkward morning after" encounter with Ms. Jones the following day and then sent text messages to her stating that he hoped that he had not been "too weird" and asking whether she planned to tell her roommate what had happened because he "[didn't] want to upset her," all of which indicate that Plaintiff possessed awareness of his encounter with Ms. Jones and understood that it was potentially upsetting.

35.     With respect to the first sentence of paragraph 35, Defendants admit that Attorney Kurker interviewed LR on November 11, 2013, but state that they are without knowledge or

information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this sentence, and therefore leave Plaintiff to his proof.  Defendants deny Plaintiff's mischaracterization of what LR told Attorney Kurker.  Further answering, Defendants state that LR reported to Attorney Kurker that Plaintiff had "told [LR] that he thought he had assaulted a girl and [asked] what he should do about it," but that LR was "not sure [Plaintiff] was very clear with [her] why he felt that what happened that night was specifically assault."   Defendants deny any remaining allegations in paragraph 35.

36.     With respect to the first sentence of paragraph 36, Defendants admit that Attorney Kurker interviewed EK on November 11, 2013, and that EK had been Ms. Jones's roommate in February 2012.  Defendants admit that, during her interview with Attorney Kurker, EK told the Investigator that when she returned to campus after a squash meet, Ms. Jones told EK that Ms. Jones and Plaintiff had kissed.  Defendants deny that EK "informed [Attorney Kurker] that she had heard that Sandra Jones had exchanged text messages with another student and Residential Counselor at the dorm, DR, after her sexual interaction with [Plaintiff]."  Further answering, Defendants state that the audio-recording of EK's interview with Attorney Kurker reflects that EK never said any such thing to the Investigator, despite Attorney Kurker's invitation to EK to provide any additional information in the following exchange:

Attorney Kurker:         ***Is there anything else I haven't asked you about that you think would be important for me to know***?

EK:                  ***I don't think so.   Not that I can think of.***

Attorney Kurker:         Okay.  Well, I think you've given me a lot of helpful information…

Defendants admit that DR was not interviewed by Attorney Kurker, and further answering state that, during the investigation, neither Plaintiff nor anyone else identified DR as a person who might have relevant information.

37.     Except to admit that Ms. Jones did not provide text messages to Attorney Kurker, Defendants deny the allegations of the first sentence of paragraph 37.  Further answering, Defendants state that Ms. Jones disclosed to Attorney Kurker that she had "deleted" a text exchange with Plaintiff that occurred the day after the Incident "because [she] didn't want him in my phone," that Ms. Jones told Attorney Kurker that Plaintiff "might still have" the texts, and that Attorney Kurker obtained those text messages.  Defendants deny the remaining allegations of paragraph 37.

38.     Defendants admit that Plaintiff provided Attorney Kurker with documents purporting to be Facebook exchanges between him and EK, Ms. Jones's roommate in 2012, and between him and RM, and that one of RM's exchanges stated, "I know that she hooked up with another guy after you left that same night."  Defendants deny that any prior or subsequent sexual interaction between Ms. Jones and this person would have been relevant to the issue of whether the interaction between Ms. Jones and Plaintiff was consensual and further answering state that Plaintiff never requested that Attorney Kurker seek to identify this person or interview him. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 38, and therefore leave Plaintiff to his proof.

39.     Defendants admit the first and second sentences of paragraph 39.  Defendants deny that EK made any "statement" to Attorney Kurker that "Sandra Jones had exchanged text messages with another student, DR, about her sexual encounter with John Doe immediately after the event."  Further answering, Defendants state that the audio-recording of EK's interview with

Attorney Kurker reflects that EK never said any such thing to the Investigator (see response to paragraph 36 above).  Defendants deny any remaining allegations in paragraph 39.

40.     Defendants admit that the Investigative Report did not offer any conclusion as to whether Plaintiff had forced Ms. Jones to engage in oral sex because the College's policy provides that any decision on responsibility will be made by the hearing board, not the investigator, stating, "The Investigator may provide a summary of his/her impressions including context for the evidence, *but will not make a determination as to whether a violation occurred, reserving that decision for the Hearing Board*."  Defendants deny the remaining allegations in paragraph 40, which mischaracterize the Investigator's Report.

41.     Defendants deny the allegations in paragraph 41, which mischaracterize the Investigator's Report.

42.     Defendants admit that Plaintiff was provided a list of trained advisors to assist him in the disciplinary process, and that Plaintiff personally asked Dean Moore, Assistant Dean of Students and Director of Residential Life, if he would serve as Plaintiff's advisor.  Defendants deny the remaining allegations in paragraph 42.

43.     Denied.

44.     Defendants are without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in the first three sentences of paragraph 44.  Regarding the fourth sentence, Defendants deny that Plaintiff was "isolated" from sources of support or that he was "forbidden to discuss his predicament."   Further answering, Defendants state that the *Student Handbook* advised both Plaintiff and Ms. Jones that they had equal access to support and counseling through the College, stating as follows:

> The college is committed to treating all individuals with dignity, care and respect.
> Any individual affected by sexual misconduct, whether as a Complainant, a

> Respondent or a third party, will have equal access to support and counseling services through the college.  The college recognizes that any individual involved in an incident of sexual misconduct may have questions, and we encourage Amherst community members to seek the support of campus and community resources.

Defendants deny that Plaintiff was told "he could not have the assistance of legal counsel."  To the contrary, the *Student Handbook* advised both Plaintiff and Ms. Jones that they "[had] the right to consult private attorneys, at their own expense."  With respect to Dean Moore's role as Plaintiff's advisor, Defendants admit that the *Student Handbook* stated:

> An Advisor serves to guide the student through the pre-hearing and hearing process and may accompany the student to any meeting with a college employee and to the hearing.  The Advisor is not an advocate for the student and may not direct questions to or otherwise address the Sexual Misconduct Hearing Board (Hearing Board) but may consult the student that he or she is assisting.

Further answering, in his role as Plaintiff's advisor, Dean Moore advised Plaintiff that he should discuss his situation and seek support while he was going through the disciplinary process, including from his family, and that he had the right to have the assistance of a private attorney.  Defendants deny any remaining allegations in paragraph 44.

45.     Regarding the first sentence of paragraph 45, Defendants admit that, with respect to additional witnesses and documents to be presented at the disciplinary hearing, the *Student Handbook* advised Plaintiff as follows:

> [Each party's] witness list must be submitted not later than three days prior to the hearing date.  For any witness not interviewed by the Investigator, the following information is required at the time the witness list is submitted:
>
> - Names of witnesses the party intends to call
> - A written statement and/or description of what each witness observed
> - A summary of why the witness' presence is relevant to making a decision on the complaint
> - The reason why the witness was not interviewed by the investigator.
>
> The Dean of Students or designee will determine if there is sufficient justification for permitting a witness who was not interviewed by the Investigator.  The Dean

of Students or designees may also require that the Investigator interview the newly suggested witness.

****

The Complainant or Respondent may wish to present additional documentation or other evidence at the hearing that was not provided to the Investigator.  Within three days prior to the hearing date, they must submit to the Dean of Students or designee serving as Chair of the Hearing Board the list of documents or other evidence.  The list of documents must contain the following information:

- Identification and description of the document or other evidence the part intends to present.
- A summary of why the document or other evidence is relevant to making a decision on the complaint.
- The reason why the document or other evidence was not provided to the Investigator.

The Dean of Students or designee will determine if the additional documentation or other evidence is relevant and if there is sufficient justification for permitting its use at the hearing whether it was not provided to the investigator.

With respect to the second sentence of paragraph 45, Defendants admit that Plaintiff informed the Investigator that he had been told by RM many months before his disciplinary hearing that Ms. Jones had reportedly "hooked up with another guy after [Plaintiff] left that same night," but Defendants are without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegation that he was "unaware of the identity the other student."  Defendants deny Plaintiff's suggestion that Ms. Jones's sexual interactions with someone other than Plaintiff would have any bearing on whether Plaintiff had non-consensually forced Ms. Jones to perform oral sex on him during the Incident.  Defendants deny the remaining allegations in paragraph 45.

46.     With respect to the first sentence of paragraph 46, Defendants deny that any such "advice" was provided, and thus deny these allegations.  Defendants deny Plaintiff's characterization of the contents of the *Student Handbook,* which states, "Generally, prior sexual history of the Complainant and the Respondent will not be allowed."    Defendants deny

Plaintiff's suggestion that Ms. Jones's sexual interactions with someone other than Plaintiff would have any bearing on whether Plaintiff had non-consensually forced Ms. Jones to perform oral sex on him during the Incident.  Defendants deny that Plaintiff's advisor "ignored and failed to advise" Plaintiff about any "evidence," and further answering state that the role of an advisor is to provide guidance through the disciplinary process, as the *Student Handbook* makes clear. Defendants deny all remaining allegations in paragraph 46.

47.     Defendants admit that Ms. Jones submitted her Assault Complaint on October 28, 2013 and that Plaintiff's disciplinary hearing was conducted on December 12, 2013, during the reading period, and further answering state that this timetable was consistent with the time frames set forth in the *Student Handbook* (which stated that the College "will attempt to complete the process within 60 days") and with the OCR's guidance provided in the "Dear Colleague Letter" ("Based on OCR experience, a typical investigation takes approximately 60 calendar days following receipt of the complaint").  Defendants deny all remaining allegations in paragraph 47.

48.     Defendants admit that Dean Larimore chaired the disciplinary hearing. Defendants further admit that the following persons were also present throughout the hearing: Plaintiff, Dean Moore (Plaintiff's advisor), Ms. Jones, Ms. Jones's advisor, Dean Mitton Shannon, Amherst's General Counsel, Ms. Frankl, EB (a student who provided assistance to Ms. Jones during the hearing as an accommodation to Ms. Jones's speech impediment), and three hearing board members from Mount Holyoke College, Hampshire College, and Smith College. Defendants further admit that the following persons testified and were present during their own testimony: Attorney Kurker, LR (a peer advocate for sexual respect), EK (Ms. Jones's former roommate), NK (Plaintiff's former roommate), and RM (who stated that she was a friend of Ms.

Jones and EK at the time of the Incident but no longer).   Defendants admit that a document

purporting to be a transcript of the disciplinary hearing is attached as <u>Exhibit 3</u>.  Defendants are

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 48 and therefore leave Plaintiff to his proof.

49.    Admitted.

50.    Defendants admit that at the commencement of the disciplinary hearing, Dean

Larimore reviewed and accurately described the rights and process set forth in the *Student*

*Handbook*, stating as follows:

> [B]oth parties have met with the Dean of Student Conduct[,] have been informed
> of the procedures that the Sexual Misconduct Board will be following through this
> hearing and have also been informed of the following rights:
>
> - the right to present information regarding the alleged complaint
> - the right to a fair and unbiased hearing
> - the right to present witnesses who have relevance to the complaint
> - the right to select a trained advisor from a list provided by the Dean of
>   Student Conduct, and to have the advisor present with them during the
>   hearing.  And just to remind the advisors that the advisor may not
>   participate directly in the proceedings[;]… no legal representation is
>   allowed during the hearing as well.
> - the right to be present during the hearing and to [confer] with an advisor
>   during testimony.
> - the right to question witnesses and to respond to all written testimony.

Further answering, Defendants state that Plaintiff was advised, and the *Student Handbook* stated,

that he had the right to a private attorney, and that his attorney could be present on campus

during the disciplinary hearing and available for consultation.

51.    Defendants admit that Ms. Jones testified, and Plaintiff did not dispute, that a

sexual encounter had occurred between them, and that the issue was whether the encounter was

at all times consensual.  Defendants deny all remaining allegations in paragraph 51.

52.     Defendants admit that Attorney Kurker testified first at the disciplinary hearing and summarized Ms. Jones's Assault Complaint, Plaintiff's response, her investigation (including her interviews of the witnesses identified by Ms. Jones and by Plaintiff), and her Investigative Report.  Defendants admit that Attorney Kurker, while purporting to summarize information that had been provided by the Ms. Jones, provided the following quoted remarks during the disciplinary hearing.   Further answering, however, Defendants state Attorney Kurker's actual questioning of Ms. Jones during her November 11, 2013 interview focused on whether she had told anyone "at the time" that the Incident was "non-consensual," as reflected in the following exchange:

> Attorney Kurker:        Did anyone other than [JM] know that it [the Incident] *was*
>                         *non-consensual at the time*?
>
> Ms. Jones:              No.

Immediately following this exchange, Attorney Kurker then asked Ms. Jones whether she had texted, emailed, written notes, or kept a journal "about this," to which she responded, "No."  In the context of the questioning, Ms. Jones reasonably could have understood Attorney Kurker to have asked her whether she had communicated or recorded in writing that the Incident had been "non-consensual."

53.     Defendants admit that Ms. Jones provided the following information to the hearing board:

- Ms. Jones "agreed to perform oral sex at the beginning" of the sexual encounter with Plaintiff;

- Ms. Jones became "uncomfortable" after Plaintiff began saying "weird things" in a "cocky way" about having "hooked up" with both Ms. Jones and her roommate;

- Ms. Jones then said "no" repeatedly and physically pushed Plaintiff away, "[but he] did not listen or pay attention to [her] clear refusal";

- Plaintiff then "held [Ms. Jones] down, forcing his penis into [her] mouth until he ejaculated";

- Ms. Jones "quickly tried to convince [herself] that nothing out of the ordinary happened";

- Ms. Jones "realized that [she] did not want to be alone" and "texted a friend to come over and talk to me and spend the night," but she did not tell her friend about the assault or her interactions with Plaintiff; and

- Ms. Jones reported that "[the] assault was terrifying and traumatic for [her] and took [her] a long time to name, let alone tell anyone about it," and that it "had taken [her] longer still to feel able to bring it forward."

54.     Defendants admit that, during the disciplinary hearing, a board member asked Ms. Jones to "walk us through … the hours from when the event happened until … say, 6:00 a.m. or until you went to sleep" and that Ms. Jones then testified:

> After [Plaintiff] left the room [to go to the bathroom], I did not want him to return to my room to continue assaulting me.  To ensure that, I threw his clothes, wallet, keys and phone out into the hallway and locked my door so he would have no reason to return. …
>
> After [Plaintiff] grabbed his clothes, I felt very alone and confused about what had happened.  I quickly tried to convince myself that nothing out of the ordinary happened but I realized that I did not want to be alone.  I texted a friend to come over to talk to me and spend the night.  I did not tell my friend anything about the assault or that I had interacted with [Plaintiff] at all.

Defendants admit that, although Plaintiff had the opportunity to do so, he never asked Ms. Jones to identify "the friend" whom Ms. Jones texted, and Ms. Jones was not asked that question by anyone else.  Defendants further admit that Plaintiff never asked the investigator to identify or seek to interview "the friend," and that the "friend" did not testify at the hearing.

55.     Defendants deny that Plaintiff testified that he had "experienced a total blackout" on the night of the Incident.  Further answering, Defendants state that Plaintiff's testimony at the hearing reflected that he possessed conscious awareness and that he was able to recall multiple events and interactions on the night of the Incident, including that he was able to:

- Recall where he went over a period of time and who he was with (*e.g.*, having dinner in town with friends, walking half a mile to a party, hanging out with friends at a dorm for some period of time, walking through town and then entering another dorm that he had never been in before, walking through the main campus, encountering someone who told Plaintiff that Plaintiff was "pretty drunk," walking back to his room with his roommate, and laughing in his room with his roommate);

- Approximate how much he drank;

- Assess his level of intoxication;

- Make a reasoned decision to stop drinking ("I remember at some point …I knew I was like getting much more drunk that I should have been and I stopped drinking"); and

- Make a "conscious effort" to go to the Socials (a group of dorms on campus).

Defendants deny that Plaintiff stated that his "defense" was that "despite his [alleged] lack of memory, he would never force a woman to have sex."  Further answering, Defendants state that Plaintiff reported that although he had "never pushed the boundaries" in his prior sexual interactions with other women, he would not "comment on" his interaction with Ms. Jones, stating, "I don't remember anything and I won't, you know, comment on, you know, what might have happened that night."  Defendants deny any remaining allegations in paragraph 55.

56.     Defendants admit that, in response to questions from the hearing board, Ms. Jones testified:

> After [Plaintiff] left the room [to go to the bathroom], I did not want him to return to my room to continue assaulting me. To ensure that, I threw his clothes, wallet, keys and phone out into the hallway and locked my door so he would have no reason to return. …
>
> After [Plaintiff] grabbed his clothes, I felt very alone and confused about what had happened. I quickly tried to convince myself that nothing out of the ordinary happened but I realized that I did not want to be alone. I texted a friend to come over to talk to me and spend the night. I did not tell my friend anything about the assault or that I had interacted with [Plaintiff] at all.

Defendants admit that EK initially testified, "[O]ur friend DR was our RC [Resident Counselor] and he told me that she texted right after having been done and like said that she had like done something bad," but further answering state that EK then apologized and testified that it was "really hard to remember" and that "someone" told her that but she "[didn't] know who."

Defendants admit that a board member followed up and asked Ms. Jones about the referenced text message to DR and its content, and that Ms. Jones (who stutters) responded as follows, first orally and then in a typewritten response:

> Um, so – so I think I – um, so, – um, so I think I did say like well, something about … Something about – something about like well doing … Well, about … Well, about like well doing a bad thing. But I mean… So actually like well texted him, um, so almost – so almost like right after, um, [Plaintiff] had, um, left. Um, I – when I didn't – so I didn't… So I didn't … So I didn't … So I didn't … I'll have to type. Um.…
>
> I didn't want to address what had happened to me and I was in no position yet to accept that it had been rape. So, in my text messaging to DR, I only said things about the hook-up as if it had been consensual.

Defendants admit that Plaintiff never asked EK or Ms. Jones at the hearing if either had a copy of the texts, and they were not asked that question by anyone else. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 56, and therefore leave Plaintiff to his proof.

57.     Defendants deny the first sentence of paragraph 57, and further answering state that the Procedure states, "The Hearing Board reserves the right to recall any party or witness during the hearing process for further questions and to seek additional information necessary to make a decision."   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 57, and therefore leave Plaintiff to his proof.

58.     Defendants admit the first three sentences of paragraph 58.   Defendants admit that the decision letter stated:

> Based on the evidence presented and after deliberating, the Board found you **responsible**, by a preponderance of the evidence, for violating *the Statement on Respect for Persons* specifically the *Sexual Misconduct Policy: Sexual Assault*. As a result of this finding, the Board assigned the following sanctions:
>
> 1)  You are expelled from Amherst College effective immediately.  Expulsion is a termination of your student status at Amherst College.
>
> 2)  Your Amherst College Transcript will have a notation indicating that you were expelled.  Specifically it will note "Disciplinary Expulsion".
>
> 3)  You cannot be on campus or attend any Amherst College sponsored events unless you have written permission from myself or the Dean of Students.
>
> 4)  A No-Contact Order with [Sandra Jones] will go into effect immediately. You must not contact [Ms. Jones] by telephone, other technology, in person or through a third party.  No contact includes no direct or incidental contact.
>
> The Board carefully considered the evidence, and identified the following factors as being influential in their finding:
>
> • Your account of being "blacked out" is credible.  However, as stated in the Student Handbook: "Being intoxicated or impaired by drugs or alcohol is never an excuse for sexual misconduct and does not excuse one from the responsibility to obtain consent" p. 32
> • [Ms. Jones's] account of withdrawing consent after it had initially been given – as evidenced by [Ms. Jones] saying "no" and "I don't want to keep

going" and by her asking you to leave and pushing you away – is credible and supported by a preponderance of the evidence.

Defendants deny any remaining allegations of paragraph 58.

59.    Admitted.

60.    Defendants admit that Plaintiff was advised in the decision letter that he "cannot be on campus … unless [he has] the permission of the Dean of Students." Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 60 and therefore leave Plaintiff to his proof.

61.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 61 and therefore leave Plaintiff to his proof. Defendants admit that Plaintiff's appeal was denied. Defendants deny any remaining allegations in paragraph 61.

62.    Defendants admit that, on January 16, 2014, the College sent an email to the Amherst College Community that included the quoted statements and stated that an unidentified student had been expelled and was not allowed on campus, all of which were true statements. Defendants deny that the email notification was "not authorized by any written policy," and further answering state that such a disclosure was permissible under the Family Educational Rights and Privacy Act. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 62 and therefore leave Plaintiff to his proof.

63.    Defendants deny that Plaintiff first retained counsel after he was expelled and his appeal was denied, as Plaintiff told Dean Moore during the appeal period that he had met with an attorney, who had crafted Plaintiff's appeal. Defendants are without knowledge or information

sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 63, and therefore leave Plaintiff to his proof.

64.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 and therefore leave Plaintiff to his proof.

65.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 and therefore leave Plaintiff to his proof.

66.     Defendants admit that DR was a Residential Counselor in February 2013. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 66 and therefore leave Plaintiff to his proof.

67.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 and therefore leave Plaintiff to his proof.

68.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68 and therefore leave Plaintiff to his proof.

69.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69 and therefore leave Plaintiff to his proof.

70.     The assertions in this paragraph are not factual allegations in support of any claim, but rather argument and rhetoric, to which no response is required.  To the extent a response is deemed necessary, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70 and therefore leave Plaintiff to his proof.

71.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71 and therefore leave Plaintiff to his proof.

72.     Admitted.

73.     Defendants deny that the College had "no legitimate explanation or justification" for its unwillingness to grant Plaintiff's request to "reopen" the hearing or investigation months after his expulsion, a request that had no support in the law or the College's Policy and Procedures.

74.     Denied.

75.      Defendants admit that Ms. Jones was a student as of April 16, 2014.  Defendants deny that the College then "had possession of evidence that Sandra Jones had not only initiated the sexual interaction but was the moving force," that the College "knew that [Plaintiff] was incapacitated" at the time of the Incident, that the College "had evidence" that Ms. Jones "was guilty of an offense," or that Ms. Jones had "lied to the investigator and lied at the hearing." Defendants admit that the College did not "reopen the proceedings" against Plaintiff, and that Ms. Jones graduated.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 75, and therefore leave Plaintiff to his proof.

76.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 76 and therefore leave Plaintiff to his proof.  Defendants deny the allegations in the second sentence of paragraph 76.

77.     Denied, including Plaintiff's mischaracterization of the Report of the Special Oversight Committee on Sexual Misconduct, which speaks for itself in its entirety.

## COUNT I
## Breach of Contract (v. College)

78.     Defendants incorporate their responses to paragraphs 1 through 77.

79.      Denied.

80.    Denied.  The allegations in this paragraph mischaracterize and selectively quote, out of context, provisions in the *Student Handbook*, which speaks for itself in its entirety.

81.    Defendants admit that the *Student Handbook* states:

> The College is committed to establishing and maintaining an environment free of all forms of harassment and discrimination for all college community members. The college does not discriminate on the basis of race, color, ethnicity, national origin, age, sex, sexual orientation, gender identity or expression, physical or mental disability, religion, or any other protected class.

Further answering, Defendants state that the College fully honored that commitment.

Defendants further admit that the *Student Handbook* states:

> While a report [of sexual misconduct] may emerge through many sources, the College is committed to ensuring that all reports are brought to the College's Title IX team. This interdepartmental team, led by the Title IX Coordinator, ensures consistent application of the policy to all individuals and allows the College to respond promptly and equitably to eliminate the misconduct, prevent its recurrence and address its effects.  The Title IX team coordinates the review, investigation and resolution of the report and ensures that all appropriate interim measures are implemented….

> The Title IX team member may determine if an investigation of the report of sexual misconduct should be conducted.  This determination is based on a variety of factors, such as the Complainant's wish to pursue disciplinary action, the risk posed to any individual or the campus community by not proceeding, and the nature of the allegation.

Further answering, Defendants state that the College fully complied with these provisions.

Plaintiff's allegations in this paragraph otherwise mischaracterize and selectively quote, out of context, provisions in the *Student Handbook*, which speaks for itself in its entirety, and Defendants deny those allegations.

82.    Denied.

83.    Defendants admit only that the Student Handbook states: "Being intoxicated or impaired by drugs or alcohol is never an excuse for sexual misconduct and does not excuse one from the responsibility to obtain consent."  Defendants deny that the evidence "clearly showed"

that Plaintiff was "blacked out," or that the hearing board made any such "finding." To the contrary, Defendants state that Plaintiff's own testimony reflected that he possessed conscious awareness and that he was able to recall multiple events and interactions on the night of the Incident, including that he was able to:

- Recall where he went over a period of time and who he was with (*e.g.*, having dinner in town with friends, walking half a mile to a party, hanging out with friends at a dorm for some period of time, walking through town and then entering another dorm that he had never been in before, walking through the main campus, encountering someone who told Plaintiff that Plaintiff was "pretty drunk," walking back to his room with his roommate, and laughing in his room with his roommate);

- Approximate how much he drank;

- Assess his level of intoxication;

- Make an informed reasoned decision to stop drinking ("I remember at some point … I knew I was like getting much more drunk that I should have been and I stopped drinking"); and

- Make a "conscious effort" to go to the Socials (a group of dorms on campus).

In addition, the testimony of NK, Plaintiff's roommate and a witness called by Plaintiff, squarely *contradicted* Plaintiff's contention that he had "blacked out" on the night of the Incident. NK testified that Plaintiff was "intoxicated," but that he "seemed totally normal" and capable of "pretty civil conversation" (Complaint, Ex. 3, pp. 101-102). NK further testified that although he had seen Plaintiff "blacked out" on *other* occasions, *Plaintiff was <u>not</u> "blacked out" on the night of the Incident.* Specifically, NK testified as follows:

| | |
|---|---|
| Board Member: | [A]re you able to tell when [Plaintiff] has blacked out? |
| NK: | Um, I would say yes. |
| Board Member: | And **did he appear to have been blacked out that evening, the night in question**? |
| NK: | **No, because he seemed – his function normally seemed fine – I had conversations with him**.  (Complaint, Ex. 3, pp. 103-104) |

Plaintiff mischaracterizes and selectively quotes, out of context, provisions in the Student Handbook, which speaks for itself in its entirety, and Defendants deny those allegations.  The remaining assertions in this paragraph are not factual allegations in support of any claim, but rather argument, rhetoric, and legal conclusions, to which no response is required.

84.   Denied

85.   Denied.

86.   Denied.

87.   Denied.

## COUNT II
## Breach of Covenant of Good Faith and Fair Dealing (v. College)

88.   Defendants incorporate their responses to paragraphs 1 through 87.

89.   This paragraph purports to state legal conclusions, to which no response is necessary.

90.   Denied.

91.   Denied.

## COUNT III
## Tortious Interference with Contract (v. Individual Defendants)

92.   Defendants incorporate their responses to paragraphs 1 through 91.

35

93.     Denied.

94.     Denied.

95.     Denied.

## COUNT IV
## 20 U.S.C. §1681 (Title IX) (v. All Defendants)

96.     Defendants incorporate their responses to paragraphs 1 through 95.

97.     This paragraph purports to state legal conclusions, to which no response is necessary.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

## COUNT V
## 42 U.S.C. § 1981 (v. All Defendants)

103.    Defendants incorporate their responses to paragraphs 1 through 102.

104.    This paragraph purports to state a legal conclusion, to which no response is necessary.

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied.

## COUNT VI
## Massachusetts Civil Rights Act (G.L. c. 12, §§ 11H, 11I) (v. All Defendants)

109.    Defendants incorporate their responses to paragraphs 1 through 108.

110.    This paragraph purports to state a legal conclusion, to which no response is necessary.

111.    Denied.

112.    Defendants admit only that LR was a member of the Special Oversight Committee on Sexual Misconduct.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 112, and therefore leave Plaintiff to his proof.

113.    Denied.

114.    Denied.

115.    Denied.

116.    Denied.

## COUNT VII
## Defamation (v. All Defendants)

117.    Defendants incorporate their responses to paragraphs 1 through 116.

118.    Defendants admit that, on January 16, 2014, the College (not the individual defendants) sent an email to the Amherst College Community that included the quoted statements.  Defendants deny any remaining allegations.

119.    Defendants admit that, on January 16, 2014, the College (not the individual defendants) sent an email to the Amherst College Community that included the quoted statements.

120.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 120, and therefore leave Plaintiff to his proof.

121.    Denied.

122.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 122, and therefore leave Plaintiff to his proof.

123.   Defendants admit only that Plaintiff's transcript bears the notation "Disciplinary Expulsion," without any reference to sexual assault.  Defendants deny all remaining allegations in paragraph 123.

124.   Denied.

125.   Defendants deny that they published any defamatory statements about Plaintiff, and they deny all remaining allegations in paragraph 125.

126.    Defendants deny that they published any false and defamatory statements about Plaintiff, and they deny all remaining allegations in paragraph 126.

## COUNT VIII
### Intentional Infliction of Emotional Distress (v. All Defendants)

127.   Defendants incorporate their responses to paragraphs 1 through 126.

128.   Denied.

129.   Denied.

## COUNT IX
### Negligent Infliction of Emotional Distress (v. All Defendants)

130.   Defendants incorporate their responses to paragraphs 1 through 129.

131.   Denied.

132.   Denied.

## COUNT IX
### Injunctive Relief (v. College)

133.   Defendants incorporate their responses to paragraphs 1 through 132.

134.   Denied.

135.   Denied.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

At all times relevant to this case, Defendants acted reasonably, in good faith, and in accordance with their legal duties, rights, and obligations.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by a failure to mitigate any alleged damages.

**WHEREFORE**, Defendants respectfully request that this Court:

1.    Dismiss Plaintiff's action in its entirety;

2.    Award Defendants their costs of suit; and

3.    Award Defendants such other and further relief as the Court deems just and proper.

## JURY DEMAND

Defendants demand a trial by jury on all issues so triable.

**CAROLYN MARTIN, JAMES LARIMORE, TORIN MOORE,  SUSIE MITTON SHANNON, and LAURIE FRANKL,**
By their attorneys,

/s/ Scott A. Roberts
Scott A. Roberts (BBO No. 550732)
        sroberts@hrwlawyers.com
Tobias W. Crawford (BBO No. 678621)
        tcrawford@hrwlawyers.com
Hirsch Roberts Weinstein LLP
24 Federal Street, 12th Floor
Boston, Massachusetts 02110
(617) 348-4300

Dated: July 20, 2015

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on July 20, 2015.

/s/ Scott A. Roberts
Scott A. Roberts