Dear Provost Uvin,

This document represents my formal appeal of the hearing board's decision, on Friday, December 13th, to find me responsible of sexual misconduct and expel me from the College. In accordance with the College's stated rules concerning grounds for appeal, the following are my grounds. I thank you for considering this appeal, and for treating it with due gravity.

- *Relevant, substantive and new information, not available at the time of the hearing*

On ▬▬▬▬▬—▬▬ days after the hearing—an article was published in the ▬▬▬▬▬▬ which quoted Sandra Jones in her capacity as a sexual assault activist ("▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"(see Attachment A). Ms. Jones was quoted as saying the following: "'▬▬▬▬▬▬▬▬▬▬," Jones said. '▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬'" (emphasis added).

Ms. Jones 's quote—and with it the revelation of her apparent crusade to see a student expelled for rape (such desire manifested by her saying that Amherst's lack of expulsions are "▬▬▬▬" and "▬▬▬▬▬▬▬▬▬▬▬▬") are the very definition of relevant, substantive, and new information not available at the time of the hearing.

It's relevant: the case between Ms. Jones and me culminated in me being the first student being expelled for sexual misconduct in 20 years, fulfilling the desire she expressed in the article. It's substantive: Ms. Jones 's desire to bring about a change to Amherst's history of not expelling students for sexual misconduct is wholly material to my case because it is a potential explanation for why she accused me of assault (particularly after so much time had passed), and was not addressed in the investigation or our hearing. It's new: this article was published after the hearing and shortly after my sentence came down; I had no opportunity to raise it, and the hearing board had no opportunity to consider it, or to consider Ms. Jones 's larger, stated goal of bringing about more expulsions for sexual misconduct. Furthermore, when I brought this article to the attention of two of my witnesses— EK and RM —each of whom previously testified to the investigator that they saw no reason why Ms. Jones would have any ulterior motivation to bring this complaint, *both* witnesses emphatically stated that this new information would cause them to change their testimony to the investigator (and therefore to the board) regarding Ms. Jones 's motivation. If any piece of information could be considered relevant, substantive, and new, it would be this.

This information is also generally admissible under the College rules concerning hearings, because it is not in any way related to sexual history, but rather to ulterior motives. I am aware that information concerning ulterior motives is admissible, because the hearing board heard and discussed information concerning Ms. Jones becoming estranged from her group of friends in the context of it being a potential ulterior motive for bringing a complaint.

This ground for appeal also applies as much to the sentence as to the finding of responsibility. A material point that was never addressed by the hearing board occurred at the beginning of the hearing, when the investigator noted that, upon asking [Sandra Jones] what result she would like to have from the hearing, [Ms. Jones] responded that she "wanted [John Doe] expelled from the college because she believes that he will commit another act of sexual misconduct." The alleged incident between [Ms. Jones] and me occurred nearly two years ago, during which time I have never been the subject of any other alleged misconduct (just as I had never been the subject of any alleged misconduct prior to the incident). Given that three semesters have passed since this incident, and only one remains before both [Ms. Jones] and I are scheduled to graduate, it is entirely unreasonable for the board to expel me on the grounds that I am some sort of a threat— [Ms. Jones]'s stated reason for wanting my expulsion. It becomes even more unreasonable to rest my expulsion on the grounds that [Ms. Jones] stated given her comments to the [████████] regarding her desire to see a student expelled *not* out of fear of a second misconduct, but because a lack of expulsions are "unacceptable." Therefore, this desire for expulsions on the part of [Ms. Jones] is also relevant, material, and new not only with regard to my innocence, but to [Ms. Jones]'s call for my expulsion in the event of a finding of responsibility as well.

I want to be clear that I applaud [Ms. Jones]'s and others' work to reform Amherst's culture of sexual disrespect. I would never discount the work that she and [LR] engage in to enhance rights for campus survivors of sexual assault. However, it is equally important that the revised rules and procedures put in place not be abused as part of a greater campaign. [Ms. Jones]'s desire to see a student expelled for sexual misconduct, expressed so starkly in [████████] less than 48 hours after our hearing, introduces a strong material presumption of motive that, in the interests of a fully-informed and above all just adjudication, simply must be considered by the board in the appeal stage.

That the complaint and the proceedings resulted from a political agenda is further bolstered by another material, relevant, new point that the board did not have an opportunity to consider. I learned only after the close of the hearing that it was not [Ms. Jones], but rather [LR] — who was not present for any portion of the alleged incident—who reported the incident to the College (more than a year after it occurred) and convinced [Ms. Jones] to bring a complaint against me. This is new information because I did not learn of it until after the hearing and sentence, when I was informed by an outside party with knowledge of the situation that it was [LR] who reported the incident. I had no opportunity to call a witness to that effect or to ask [Ms. Jones] if it was she or [LR] who initiated the charges against me, and the board had no opportunity to consider the hugely substantive implications of this fact.

This is relevant for several reasons. [LR] is [████████] *AC Voice*, a website devoted in large part to raising awareness about Amherst's allegedly poor record of bringing justice to survivors of sexual assault. Again, that is work I applaud. But it is material, however, that *AC Voice* has likewise lamented the lack of sexual misconduct expulsions at Amherst, and expressed its desire to bring about more (see Attachment B). [Ms. Jones] opted not to report anything or bring a complaint against me; in fact, it wasn't until many months after the fact, following a conversation between [LR] and me, that [LR] approached [Ms. Jones] to suggest bringing a complaint and allowing her ([LR]) to serve as a

witness. Because neither the board nor I knew that LR was the genesis of the complaint, the board had no opportunity to consider the likelihood that this complaint was a sort of 'test case' engineered and prompted by LR, who was not a party to or a witness of the alleged incident. As the person reporting the incident and instigating the complaint, LR's potential motivations (specifically her very public efforts to ensure that more students are expelled for sexual misconduct) are therefore material, and they were not made available to the hearing board.

Furthermore, LR's testimony conflicted repeatedly with the testimony of every other witness, myself, and even Ms. Jones—and went unchallenged. According to the investigator's report, LR claimed that I freely admitted my culpability to her many months after the incident, which I most certainly did not. She claimed that I expressed feeling "out of control," which I did not ever express, and which contradicted not only my own testimony but the testimony of all other witnesses who testified that I had no memory of the night in question. She acknowledged that her retelling "was confusing" and that her memory was admittedly unclear. She told the investigator that Ms. Jones and I had sex, which no one else, including Ms. Jones, claimed. She conflated my not remembering the events with a conclusion of sexual assault, a claim the investigator deemed illogical during the hearing. Over and over again during the investigator's report, LR's testimony contradicted the testimony of all other parties and witnesses.

It is not LR's pattern of false testimony that constitutes new, substantive, material information—that's readily available in the record. It is the new information that has come to my attention—that LR orchestrated the complaint and actually formally reported the incident—that *colors* her false testimony and turns it from merely a separate violation of the honor code into a determinative breach of justice which certainly prejudiced the hearing board. Had I known that LR was the person who filed the complaint, I would have called numerous additional witnesses who could testify as to LR's public campaign to get a student expelled for sexual misconduct, a crusade for which she is very well known on campus. Should my appeal be granted, I would be prepared to call any number of witnesses to testify as to LR's propensity to distort facts in the interest of obtaining findings of responsibility in sexual misconduct cases, and history of falsification in the wake of my hearing.

- *Material procedural errors*

Another material point that was not addressed by the board was the fact that Ms. Jones's formal complaint contradicts her testimony. In her original complaint (as described at our hearing by the investigator), she claimed that our interaction was entirely nonconsensual. When the investigator asked her about the incident, however, Ms. Jones admitted that the vast majority of our time together had been consensual, and only turned nonconsensual towards the very end of our encounter. This discrepancy is hugely substantive—either Ms. Jones provided misinformation in her complaint, or she provided misinformation to the investigator. The changing nature of Ms. Jones's allegations was not addressed during the hearing, a violation of both my material substantive and procedural rights.

One of the hearing rules, as described during the hearing by Dean Larimore, is that "the board insists on honest and forthright responses." When, during the hearing, it was revealed by the investigator that Ms. Jones changed the central premise of her claim (that our encounter went from consensual to nonconsensual towards the end of our encounter, rather than that our encounter was nonconsensual from the start), this rule mandated at the very least a consideration of why Ms. Jones had not been forthright in filing her complaint. That the board did not take up the issue of this rather dramatic change in her testimony, and that I had no opportunity to address it, is a fundamental and material violation of the established College rules concerning honesty within official statements made at these hearings.

On two occasions during the hearing, I was asked questions about my prior sexual history, a procedural violation of Rule X.b.2 of the College sexual misconduct rules. The rule permits questions concerning prior sexual history only on a limited basis (specifically, establishing pattern evidence), but these questions were both general in nature. One was asked by Board Member Muniz—who can be heard on the hearing record being warned about asking such a question by Dean Larimore before asking it anyway—and one was asked later in the proceeding by Dean Larimore. I answered those questions at the time because I wanted to demonstrate to the Board that I have never had any sort of allegations or problems in the past. Even so, these questions were in violation of College rules on their face, and material in nature due to their tremendous capacity to prejudice the hearing board.

Since the time of the hearing, LR violated on multiple occasions the rules concerning confidentiality of the hearing. As Dean Larimore expressed during the hearing, "no one should discuss anything that they see or hear with individuals not connected with this hearing." I am prepared to bring multiple witnesses close to LR who have heard her trumpeting her successful efforts to get me expelled from Amherst. The evidence of the wide spread gloating by LR is strong evidence of bias. Witness motivation and bias are central pillars to judging the creditability of witnesses in any proceeding based on due process.

Finally, I'd like to add one more word not about legal or procedural grounds for appeal, but about moral grounds. The College stands ready to expel me, to throw my future away based on this: a solitary complaint, reported not by the complainant but by a prominent crusader for the expulsion of sexual offenders, brought more than a year after an alleged incident, by a complainant who swore in her complaint that our encounter was entirely nonconsensual before changing her story for the investigator, who claimed that a roomful of people chanted "whore" at her during our encounter in spite of the fact that every single person in the room has testified that no such thing took place, and who herself was quoted in ▬▬▬▬▬ just two days after our hearing expressing her view that a student "has to" be expelled from Amherst for sexual misconduct. I don't know if Amherst College stands for justice, but in my worst nightmares, it cannot stand for this.

Dean Larimore stated that I had "the right to a fair and unbiased hearing." The new substantive information that has come to light since the hearing, the declaration by multiple witnesses that they would like to change their testimony concerning Ms. Jones 's motives, the procedural errors that prejudiced the board, the unexplained and unchallenged inconsistencies and contradictions on the part of the complainant and LR have rendered my hearing

anything but fair and unbiased and provide a clear basis under the rules governing this process to grant my appeal. I implore you not to throw my life away at twenty-one on such incredibly shaky grounds. At the very least, the hearing should be reopened to consider the new evidence. I thank you for your reasonableness, your sense of fairness, and your mercy in considering my fate.